### SAMSON EDWARDS v. JENNIE CULBERSON.

*Fraud — |Money Converted into Land, Land Subject to Payment — Marriage — Dower — Trusts and Trustees.*

1. Where a person is deprived of his money by fraud he may recover it in specie if it can be found, and if it has been converted into land he may subject that to the payment of the debt.

2. When a woman fraudulently obtained from a man a sum of money upon her promise to marry him, and allow the land purchased with the money to be in lieu of her dower : *Held*, the land so purchased could be subjected to the payment thereof.

3. Discussions by SHEPHERD, J., of the law relating to converting persons into trustees for the benefit of others.

This was a CIVIL ACTION, tried at the May Term, 1892, of CHATHAM Superior Court, by *Whitaker, J.*

The facts are stated in the opinion.

*Mr. T. B. Womack* (by brief), for plaintiff.
*Messrs. John Manning* (by brief) and *J. W. Graham*, for defendant.

SHEPHERD, C. J.: According to the finding of the jury, the defendant fraudulently obtained of the plaintiff the sum of two hundred and seventy-five dollars and twenty-five cents for the purpose of purchasing the land described in the complaint, and the fraud consisted in "falsely and fraudulently promising and pretending that if the plaintiff would let her have the said sum of money for said purpose she would marry him in a very short time, and that the land to be purchased with the said money should be in lieu of her right of dower, which she would acquire" by the said marriage. Upon this verdict his Honor rendered a judgment in favor of the plaintiff for the recovery of the amount so fraudulently obtained, but refused to declare it a charge upon the land purchased by the defendant with the said money, the land still remaining in her hands.

Were there nothing more than a mere promise to marry, it is plain that a violation of it would not entitle the plaintiff to any equitable relief; but we must infer from the verdict that the defendant did not intend to perform the promise at the time it was made, and that she intended it, as well as the additional agreement to hold the land in lieu of dower, simply as a trick or contrivance by which to cheat and defraud the plaintiff of his money. By submitting to the verdict and judgment, the defendant (even if she could successfully do so) is precluded from denying that she obtained the money under circumstances which the law denounces as fraudulent, and this being so, it cannot be doubted that if the specific money had been retained by her, and could have been identified, the plaintiff, in a proper action, could have recovered it. If this be true, why may not the money be traced into the land and declared to be a charge thereupon? This is a somewhat novel question in this State, but in view of well settled equitable principles, as well as authorities in other jurisdictions, it is believed to be unattended with any very serious difficulty.

The only decision of this Court to which we have been referred as bearing upon this question, is that of *Campbell* v. *Drake*, 4 Ired. Eq., 94. The plaintiff filed a bill in equity against the heirs at law of one Farrow, praying that they be declared trustees of certain land purchased by their ancestor with money stolen by him of the plaintiff while in the employment of the latter as his clerk. The Court said that it was "not at all like the cases of dealings with trust funds by trustees, executors, guardians, factors and the like, in which the owner of the fund may elect to take either the money or that in which it was invested;" and it was accordingly held that the plaintiff was not entitled to the particular relief asked for. It was strongly intimated, however, by RUFFIN, C. J, in delivering the opinion, that the plaintiff might "have the land declared liable as a security for the money laid out for it." It was not stated upon what principle this could be done, but we apprehend that it was based upon the general proposition that whenever a person has obtained the property of another by fraud, he is a trustee *ex maleficio* for the person so defrauded for the purpose of recompense or indemnity. "One of the most common cases," remarks Judge STORY, "in which a court of equity acts upon the ground of implied trusts, *in invitum*, is when a party receives money which he cannot conscientiously withhold from another party." Story Eq. Jurisprudence, section 1255. And he states it to be a general principle that "whenever the property of a party has been wrongfully misapplied, or a trust fund has been wrongfully converted into another species of property, if its identity can be traced it will be held in its new form liable to the rights of the original owner, or the *cestuis que trust.*" Section 1258; Hill on Trustees, 222; *Whitley* v. *Foy*, 6 Jones Eq., 34; *Taylor* v. *Plumer*, 3 M. & S., 562; *Knatchbull* v. *Hallest*, 13 Ch. Div., 696; *People* v. *City Bank*, 96 N. Y., 32; *Bank* v. *Insurance Co.*, 104 U. S., 54.

Mr. POMERY says: " In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, * * * or through any other circumstances, which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity imposes a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein, and a court of equity has jurisdiction to reach the property either in the hands of the original wrong-doer, or in the hands of any subsequent holder, until a purchaser in good faith and without notice, acquires a higher right and takes the property relieved from the trust.

The forms and varieties of these trusts, which are termed *ex maleficio* or *ex delicto*, are practically without limit. The principle is applied whenever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrong-doer." Pom. Eq. Jur., 1053. A confidential relation is not necessary to establish such trust, and there is no good reason why the owner of property taken and converted by one who has no right to its possession should be less favorably situated in a court of equity in respect to his remedy (at least for the purpose of " recompense or indemnity,") than one who, by an abuse of trust, has been injured by the wrongful act of a trustee to whom the possession of trust property has been confided. " The beautiful character, prevading excellence, if one may say so, of equity jurisprudence," says Judge STORY, " is that it varies its adjustments and proportions so as to meet the very form and pressure of each particular case in all its complex habitudes." The trusts of which we are speaking are not what are known as technical trusts, and the ground of relief in such cases is, strictly speaking, fraud and not trust. Equity declares the trust in order that it may lay its hand upon the thing and wrest it from the wrong-doer. This

principle is distinctly recognized by our leading text-writers, and it is said by Mr. Bispham (Principles of Equity, 92) that " equity maks use of the machinery of a trust for the purpose of affording redress in cases of fraud." The principles above stated are illustrated by many decisions to be found in the reports of other States, and as our case may easily be assimilated to those in which money or other property has been stolen and converted, such cases must be recognized as pertinent authority in the present investigation.

In *Newton* v. *Porter*, 69 N. Y., 133, it was held that the owner of negotiable securities, stolen and afterwards sold by the thief, may follow and claim the proceeds in the hands of the felonious taker, or of his assignee with notice, and that this right continues and attaches to any securities or property in which the proceeds are invested, so long as they can be traced and identified. The law, it was said, "will raise a trust *in invitum* out of the transaction in order that the substituted property may be subjected to the purposes of indemnity and recompense." ANDREWS, J., said that " equity only stops the pursuit when the means of ascertainment fails, or the rights of *bona fide* purchasers for value, without notice of the trust, have intervened. The relief will be moulded and adapted to the circumstances of the cases, so as to protect the rights of the true owner." *Lane* v. *Dighton*, Ambler, 409 ; *Mansell* v. *Mansell*, 2 P. Williams, 679 ; *Lench* v. *Lench*, 10 Ves., 511; Perry on Trusts, § 829 ; Story Equity, § 1258.

In *Bank* v. *Barry*, 125 Mass., 20, it was held that equity will charge land, paid for in part with the proceeds of stolen property, with a trust in favor of the owner of the property for the amount so used.

In *Humphries* v. *Butler*, 51 Ark., 351, the defendant, in paying for a house and lot purchased by him for $400, wrongfully used $149.52 belonging to the plaintiff, and of which he had obtained possession without her authority, knowledge or consent. The Court declared the defendant a trustee to the

extent of the money of the plaintiff used by him, and charged the same upon the property, and in default of its payment by a certain time, decreed that the same be sold to satisfy the said lien.

These, and other authorities that could be cited abundantly, sustain the intimation of Chief Justice RUFFIN, to which we have referred, and we are therefore of the opinion that the money fraudulently obtained of the plaintiff may be followed into the land described in the complaint, and that the judgment of his Honor should be so modified as to declare it to be a charge upon the same. Modified.