### HENRY MASSEY v. LOUIS ALSTON.

#### (Filed 28 March, 1917.)

1. **Equity—Deeds and Conveyances—Delivery of Deed—Promise of Payment —Fraudulent Intent.**

    Where a grantor of lands has relied upon the promise of a grantee in a deed that he would make immediate payment of the consideration, and delivered the deed to him in consequence, and it is shown that the grantee had no intention of making the payment, but gave the promise as a means of only securing the deed, it is *Held,* that the promise so made is a false representation which will entitle the grantor to equitable relief, and it can make no difference that he could have secured the purchase price at the time.

2. **Same—Trusts and Trustees.**

    Where the owner of lands has been induced to part with his deed owing to the fraudulent promise of the grantee of immediate payment of the consideration therefor, which the latter had no intention of keeping, equity is not confined to the relief of rescinding the contract and canceling the deed, but under the circumstances of this case may compel the defrauding party to make his representations good so that the other be

placed in the same situation as if the fact stated were true; as, in this case, convert the grantee into a trustee to hold the land subject to the payment of the consideration as a charge thereon.

### 3. Same—Contracts—Enforcement—Partnership.

Where partners enter into an agreement to purchase lands and hold them as a partnership asset, and one of them pays therefor, takes deed to himself, and delivers a deed to the other for a one-half interest, induced thereto by his fraudulent representation that he would immediately pay his part, it is *Held*, equity may regard the purpose for which the transaction was made, and decree a lien upon the land as a security for the consideration due by the defrauding partner.

### 4. Partnership—Deeds and Conveyances—Frauds—Trusts and Trustees—Accounting.

Where one partner has fraudulently obtained from another a deed to partnership lands, and equity has decreed a charge upon the lands .to secure the consideration, instead of rescinding the contract, the plaintiff, individually, is not entitled to an accounting for the rents and profits, for such would be due the partnership.

### 5. Same—Parties—Creditors.

In this suit in equity, decreeing the consideration due by one partner a charge upon partnership lands, the rights of creditors, not made parties, are not considered.

### 6. Appeal and Error—Improper Remarks—Correction.

Improper remarks of counsel should be corrected by the trial judge in the exercise of his discretion, and his prompt intervention in this case, in explicit and positive language, is held to have rendered such remarks harmless.

CIVIL ACTION, tried before *Bond, J.,* and a jury, at October Term, 1916, of WAKE.

The action was brought to obtain equitable relief against a transaction in which plaintiff alleged that the defendant had induced him to part with the possession of a deed for an interest in land upon a false and fraudulent promise to pay at once the consideration therefor which was mentioned in the deed. The allegation is that plaintiff was to buy the land from Eunice Dunn, the owner thereof, and pay the entire purchase price to her, and convey one-half interest in the same to defendant, upon his promise to pay immediately in cash to plaintiff his share of the purchase money. That he obtained the deed upon this promise, fraudulently intending at the time not to pay for the same, and there is some evidence of an additional representation, viz., that there was something wrong with the deed and that he pretended to want the deed for the purpose of correction, whereas his real intention and design were to get possession of it in order to record it, and thereby vest the title in

him without paying for the land or performing the promise by reason of which he procured it. Issues were submitted to the jury and answered as follows:

"1. Did Henry Massey pay $150 for land described in complaint and was an undivided half interest in the land conveyed to Lewis Alston by Eunice Dunn upon an agreement between said Alston and plaintiff Massey that if said conveyance should be so made the said Alston would at once pay to plaintiff Massey the sum of $75 as alleged in the complaint? Answer: "Yes."

2. What part, if any, of said $75 and interest has been paid by defendant Alston to plaintiff Massey? Answer: "No part; nothing."

3. Was it agreed at any time between plaintiff Massey and defendant Alston that said property should become and be a part of the partnership property to be owned by a partnership existing between said Massey and said Alston? Answer: "Yes."

4. Did the defendant Lewis Alston procure title to an undivided half interest of said lot without paying for same, and fraudulently intending at the time not to pay for it? Answer: "Yes."

The court gave judgment for the plaintiff, declaring the amount of the purchase money agreed to be paid by defendant to be a lien on the land and decreed a sale thereof to pay it, and ordered an account to be taken of the partnership. Defendant appealed.

*B. C. Beckwith and C. W. Beckwith for plaintiff.*
*Douglass & Douglass for Defendant.*

WALKER, J., after stating the case: It is manifest that the finding upon the first issue entitled the plaintiff to no equitable relief, as it merely shows a contract for the payment of money, which can be enforced by a simple action at law for its recovery. But the response to the fourth issue presents quite a different phase of the matter, and the facts found do entitle the plaintiff to relief in equity. Where upon receiving a deed for land the vendee promises to pay the purchase money, and the promise does not induce the delivery of the deed, or is not intended to influence the vendor to part with its possession, equity will not interfere, because the vendor has an adequate legal remedy; but where he promises to pay when he has no intention of doing so, as in the present case, and the vendor is induced thereby to give up something of value, it is considered as fraudulent, and equity will intervene. 35 Cyc., treating of this question, under the title, "Intention to Pay," at pp. 79 *et seq*, says: "Although a representation of intention ordinarily amounts to a mere promise, yet if a person represents that he has a certain intention when he has not, he makes a misrepresentation of fact.

Accordingly it is generally held that one who buys goods on credit impliedly represents that he intends to pay for them, and that if he intends not to pay for them he is guilty of fraud. The intention not to pay must be a preëxisting intention, that is, it must exist at the time of the sale, or contract to sell, and must be an intention not merely to pay when the price falls due, or according to agreement, but not to pay at all." The principle was then being stated in regard to personal property, but it applies equally to sales of real estate. Referring to like dealings between vendor and purchaser, the same authority says: "A promise as to the future conduct of the party making the same, as distinguished from a statement of present fact, cannot amount to fraud or misrepresentation if the party making such promise had at the time of making it the intention of performing the same. And the same is true of a mere prediction or a statement of intention or expectation. If, however, the party making the promise had at the time of making it no intention of performance, the promise involves a false statement as to the intention of the promisor, and may amount to fraud or misrepresentation. 39 Cyc., 1256. And again: "A representation of intention or expectation as to some future act or performance, although it may have induced the agreement, is not a sufficient ground for a charge of fraud merely because it is not afterward carried into effect. It must have been made with intent to deceive. Where the statement of intention can be construed as really a statement of fact, it is treated as a fraud if false, as where there is a false statement of intention. It has repeatedly been held that one who purchases goods on credit impliedly represents that he intends to pay for them, and if he not only fails to disclose his insolvency, but intends at the time not to pay for them, there is such fraud on the part of the purchaser as will entitle the seller to rescind the contract." 9 Cyc., 418. In *Edgington v. Fitzmaurice,* 29 Ch. Div., 459, *Lord Justice Cotton* said. "It was argued that this was only the statement of an intention, and that the mere fact that an intention was not carried into effect could not make the defendants liable to the plaintiff. I agree that it was a statement of intention, but it is nevertheless a statement of fact." And in the same case is the following concurring opinion of *Lord Justice Bowen,* which has been frequently quoted: "A mere suggestion of possible purposes to which a portion of the money might be applied would not have formed a basis for an action of deceit. There must be a misstatement of an existing fact; but the state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much a fact as anything else. A misrepresentation as to the state

of a man's mind is, therefore, a misstatement of fact." Bispham's Equity (9 Ed.); sec. 211, under the title of Fraud, thus states the same principles: "The representation must not be an expression of intention merely. A man has no right to rely upon what another says he intends to do, unless, indeed, the expression of intention assumes such a shape that it amounts to a contract, when, of course, the party will be bound by his engagement and for the breach of which the other side has, ordinarily, an adequate remedy at law. But if a promise is made with no intent to perform it, and merely with a fraudulent design to induce action under an erroneous belief, or if a representation amounts to a statement of fact, although dependent upon future action, in either case there is ground for equitable relief." Mr. Bispham is fully sustained in this view by the authorities cited by him in support of the text. As we are told by moralists and jurists, words are to be understood by courts of justice in the sense which it was intended they should have, and which those using them wished, and believed, that they should be believed by him to whom they are addressed, and the latter has the right to accept and act upon them as having such a meaning. The intention that he should thus understand them, and govern himself accordingly in his business intercourse with another who used them, is what gives a right to relief if it turns out that they are false, if they induce the other party to act to his prejudice, relying upon the truth of what is said in accordance with a fair and reasonable interpretation of the words. If defendant said that he would pay at once, or immediately, if the deed was delivered to him, and he had no intention of keeping his promise and no ability to do so, as in this case, and he made the false statement, dishonestly and for the purpose of getting possession of the deed, and thereby overreaching the plaintiff, knowing that plaintiff was trusting in his promise and its strict fulfillment, and gave up the deed because he did so confide in defendant's integrity and in the belief that he would do exactly what he had promised, we cannot see why this is not such a false representation as would entitle the plaintiff to equitable relief. And the great weight of authority is to this effect. It was said in *Goodwin v. Horne,* 60 N. H., 485: "Ordinarily false promises are not fraudulent, nor evidence of fraud, and only false representations of past or existing facts are actionable, or can be made the ground of defense. *Long v. Woodman,* 58 Me., 49; *Murray v. Beckwith,* 48 Ill., 391; *Loupe v. Wood,* 51 Cal., 586; *Jorden v. Money,* 5 H. L. Cas., 185; Cooley Torts, 486. But when a promise is made with no intention of performance, and for the very purpose of accomplishing a fraud, it is a most apt and effectual means to that end, and the victim has a remedy by action or defense. Such are cases

of concealed insolvency and purchases of goods with no intention to pay for them. *Bradley v. Obear,* 10 N. H., 477." And this Court has announced the same doctrine in *Des Farges v. Pugh,* 93 N. C., 31, quoting from *Donaldson v. Farwell,* 93 U. S., 631, the following: "The doctrine is now established by a preponderance of authority that a party not intending to pay, who, as in this instance, induces the owner to sell him goods on credit by fraudulently concealing his insolvency and his intent to not pay for them, is guilty of a fraud, which entitles the vendor, if no innocent party has acquired an interest in them, to disaffirm the contract and recover the goods. And he cites a number of authorities, both English and American, to support his position." It is further said: "It matters not by what means the deception is practiced—whether by signs, by words, by silence, or by acts—provided that it actually produce a false and injurious impression, of such a nature that it may reasonably be supposed that but for such deception the vendor might never have entered into the contract." The principle was applied in *Crabtree v. Bradbury,* 13 S. W., 935, to a sale of land where the facts were similar to ours and where the Court said: "There was evidence to warrant the court in finding that appellant L. P. Crabtree obtained the deed from Bradbury through a pretended purchase of the land conveyed thereby, with the preconceived intention and determination not to pay for it; and this was a fraud for which the deed should have been canceled. Fraud avoids a contract *ab initio,* both at law and in equity, and gives the defrauded party the right utterly to reject the contract," citing *Taylor v. Mills,* 1 S. W., 283, and other cases; Kerr on Fraud and Mistake, 333, 334, where it is said that the contract will be rescinded or the defrauding party will be compelled in some way to make his representation good. In *Cerry v. Paxton,* 78 Neb., 134: ."The procuring of property upon a promise which the party at the time does not intend to perform is a fraud; and it makes no difference whether the property is real or personal. Ordinarily, false promises are not fraudulent, nor evidence of fraud, and only false representation of past or existing facts are actionable. . . . But when a promise is made with no intention of performance, and for the very purpose of accomplishing a fraud, it is a most apt and effectual means to that end, and the victim has a remedy by action or defense," citing *Dowd v. Tucker,* 41 Conn., 197; *Goodwin v. Horne,* 60 N. H., 485, and numerous other cases. It can make no difference that the plaintiff could have secured the payment of the money by adopting other methods at the time for this will not defeat his equity to relief. If defendant's promise, and the declaration of his intention, had been sincere and faithful, instead of the opposite, all such precautions were

unnecessary, and the business of life could not be conducted if it were required that men should anticipate, and expressly guard against the wily devices to which the deceitful may resort. The defendant will not be allowed thus to take advantage of his own wrong, by which the plaintiff was innocently misled, and escape the consequences of his act by pleading that he should not have been trusted, but, on the contrary, dealt with on the supposition that he would act dishonorably. The law does not look with favor upon such an inadequate excuse for the wrong, but affords relief against the fraud because plaintiff might well have relied upon the promise and was misled by it, instead of pursuing some other course which defendant really prevented by his deceitful promise. The courts have rejected such a defense. *Piggott v. Stratton,* De Gex, F. and C., 33; *Sewing Machine Co. v. Bullock,* 161 N. C., 1. In the case last cited numerous authorities are collected to show that such a defense, which is founded, of course, not in the merit of the plaintiff, but the demerit of the defendant, is not allowable. We there said: "We find this in *Cottrell v. Krum,* 100 Mo., 399: 'It is no excuse for, nor does it lie in the mouth of the defendant to aver that plaintiff might have discovered the wrong and prevented its accomplishment had he exercised watchfulness, because this is but equivalent to saying: "You trusted me; therefore, I had the right to betray you." ' The same idea is expressed in another opinion, thus: 'We doubt if it is equity to allow a sharper to insist on the fulfillment of his bargain, on the ground that his victim was so destitute of sagacity as to make no further inquiries,' citing *Pomeroy v. Benton,* 57 Mo., 531; *Wannell v. Kem,* 57 Mo., 478. No man can complain that another has relied too implicitly on the truth of what he himself stated (Kerr on Fraud p. 81), for it is not just that a man who has intentionally deceived another should be permitted to say to him, 'You ought not to have trusted me, and you were yourself guilty of negligence,' when he had a special knowledge of the facts of which he knew the other to be ignorant. Bigelow on Fraud, p. 523, *et seq.* 'We are not inclined to encourage falsehood and dishonesty by protecting one who is guilty of such fraud, on the ground that his victim had faith in his word, and for that reason did not pursue inquiries that would have disclosed the falsehood.' *Hale v. Philbrick,* 42 Iowa, 81. The very representations relied upon may have caused the party to desist from inquiry and neglect his means of information; and it does not rest with him who made them to say that their falsity might be ascertained, and it was wrong to credit them. To this principle many authorities might be cited. *Graham v. Thompson,* 55 Ark., 299. A person cannot procure a contract in his favor by fraud, and then bar a defense to suit on it on

the ground that had not the other party been so ignorant or negligent he could not have succeeded in deceiving him. *Warder v. Whitich,* 77 Wis., 430. However negligent the party may have been to whom the incorrect statement has been made, yet that is a matter affording no ground of defense to the other. No man can complain that another has too implicitly relied on the truth of things he has himself stated. *Reynell v. Sprys,* 1 De Gex, M. and G., 549. These cases are approved in *Strand v. Griffith,* 97 Fed., 854, which is a very instructive one," citing, also, *Eaton v. Winnil,* 20 Mich., 156; Pollock on Torts, 293, and *Griffin v. Lumber Co.,* 140 N. C., 514, where the principle as stated in the above cases was applied. In this connection and also on the general question as to the representation being actionable, we may add the case of *Herndon v. R. R.,* 162 N. C., 317, where it was held that a promise without any intention to perform it, and merely to induce action by another, is fraudulent in a legal sense, and the party who is the victim of the fraud is entitled to relief, citing *Hill v. Gettys,* 135 N. C., 375 and *Braddy v. Elliott,* 146 N. C., 582, both of which fully sustain the principles, and they were decided upon transactions concerning the conveyance of lands, and not sales of personal property.

The next question is to the proper remedy. The plaintiff would be entitled to rescission of the contract and cancellation of the deed; but is this the only relief? Kerr on Fraud and Mistake, at p. 333, says that when a contract has been induced by false representation or the transaction is tainted with fraud and the person who committed the fraud is a party to the transaction, the latter will be set aside, if the nature of the case and the condition of the parties admit of it, or the defrauding party will be compelled to make his representation good, so that "the one whose interest has been affected by the misrepresentation (or fraud) has an equal right to be placed in the same situation as if the fact stated were true." He then says that the defrauded party may elect to have the transaction set aside, or to have such relief as will make good the representation. We do not base the right to the decree upon the doctrine of the vendor's lien, which does not exist in this State, but upon the equity arising out of the fraud to have the purchase money made a charge upon the land, upon the idea that defendant should be adjudged to hold the land in trust because of the fraud, and not be entitled to hold it absolutely until the purchase money has been paid. It is not, in principle, unlike the case of *Sykes v. Boone,* 132 N. C., 199, where a trust was created because the title had been obtained by false promise. It is in the nature of a trust *ex maleficio.* It was said in a similar case: "Where the party fraudulently obtained the conveyance, having at the time no intention of procuring a con-

veyance to his grantor, equity should have no hesitation in treating the transaction as a completed sale and. requiring him to pay the value of the premises he received and retained. The mere fact that the person defrauded might have a remedy at law would not deprive her of the right to come into a court of chancery and have the agreed consideration, or the value of the premises, declared to be an equitable lien upon the lands. *Merrill v. Allen,* 38 Mich., 483. It would be against conscience for defendant to hold the land, as he insists he has the right to do, and not pay for. it, after procuring the deed and the title by a fraud practiced upon the plaintiff.

A court of equity is not bound to wrest the property from the wrongdoer by a rescission, but may mould its decree to the particular and controlling equity of the case and the real and substantial rights of the parties. Story's Eq. Jur., sec. 27 and 28; *Edwards v. Culberson,* 111 N. C., 342, where *Chief Justice Shepherd* discusses the subject at length. Equity makes use of the machinery of a trust for the purpose of affording redress in cases of fraud, and will follow the property obtained by a fraud in order to remedy the wrong, and only stops the pursuit when the means of ascertainment fails or the rights of bona fide purchasers for value, without notice of the fraud or trust, have intervened. "The beautiful character, pervading excellence, if one may say so, of Equity Jurisprudence," says Judge Story, "is that it varies its adjustments and proportions so as to meet the very form and posture of each case in all its complex hibitudes." *Edwards v. Culberson supra.* "It is very evident," said the Court in *Danzeisen's Appeal,* 73 Pa. St., 65, "that the deed was a mortgage, or a trust *ex maleficio* would arise; for when the deed was delivered no consideration passed. Miller procured the estate without payment of any purchase money, and therefore stood in no better situation in point of fact than one in whose name a deed is taken by another who pays the purchase money. In equity the estate should remain in Danzeisen, who had received nothing but a promise to raise money for his use, unless the promise to raise be equivalent of the money when raised. If the promise was not intended to be performed by Miller, the deed was obtained by a deceit, and it was a fraud at the time it was delivered. But if the promise be performed, the true intention of the parties is executed, and the deed should stand as a security for the money." But more directly to the point is the following statement of the principle, in 2 Story's Eq. Jur., sec. 1265, p. 495: "In equity, even more strongly than at law, the maxim prevails that no man shall take advantage of his own wrong. The truth is that courts of equity, in regard to fraud, whether it be constructive or actual, have adopted principles exceedingly broad and

comprehensive in the application of their remedial justice; and especially where there is any fraud touching property, they will interfere and administer a wholesome justice, and, sometimes, even a stern justice, in favor of innocent persons who are sufferers by it, without any fault on their own side. This is often done by converting the offending party into a trustee, and making the property itself subservient to the proper purposes of recompense, by way of equitable trust or lien. Thus a fraudulent purchaser will be held a mere trustee for the honest but deluded and cheated vendor." The purchaser, where he has procured the title by fraud, will be treated as holding the land in trust (*ex delicto* or *ex maleficio*) for the benefit of his vendor, at least, in order that his obligation to the latter may be enforced. If one invests the money of another in land, especially when the money has been obtained by fraud, a court of equity will follow the fund so laid out in the land, and subject the latter by sale, if necessary, to the reimbursement of the defrauded party or owner of the money. *Edwards v. Culberson, supra.* "In cases of this sort the *cestui que trust* (the beneficiary) is not at all bound by the act of the other party. He has, therefore, an option to insist upon taking the property; or he may disclaim any title thereto, and proceed upon any other remedies to which he is entitled, either *in rem* or *in personam*. The substituted fund is only liable to his option. But he cannot insist upon opposite and repugnant rights." 2 Story's Eq. Jur., sec. 1262. What substantial difference is there between such an equity and ours, where land is procured, instead of money, upon a false and fraudulent representation of intention to pay for it? The form of the transaction is different, but not the substance. It is said that "the forms and varieties of these trusts, which are termed *ex maleficio* or *ex delicto*, are practically without limit, and the principle is applied wherever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrongdoers." 2 Pomeroy's Eq. Jur., sec. 1053, p. 628.

But if this were not a valid reason for declaring the lien the decree should be sustained, upon the ground that the declaration of a lien is necessary to conform to the purpose for which the conveyance was made, and to execute that purpose, viz., that the property should become part of the partnership's assets, each of the parties contributing one-half of the purchase money for the original tract bought of Eunice Dunn.

The plaintiff is not entitled to any accounting for rents and profits as vendor, which relief would follow a rescission, for the decree merely carries out the contract, and vests the title to the land in the defendant, subject, however, to the payment of the purchase money. What

will be the rights of the parties in this land, hereafter, growing out of their partnership dealings, we need not now determine, nor until the account is taken. The sections of the judgment numbered 1, 2, 3, 4, and 5, being the questions "specially referred to," will be stricken out, at present and without prejudice, and reference ordered to take and state the partnership account, if necessary. The questions eliminated above, if they become material in taking the account, or in the further progress of the case, may then be considered, but no rents and profits can be recovered unless due by defendant to the partnership in some way, or to plaintiff on account of the partnership relation.

The other questions are not important. The creditors cannot be affected by this judgment, they not being parties to the action. It will be time enough to hear them when they assert their rights.

There is an exception to remarks of counsel. As we said, substantially, in *S. v. Davenport,* 156 N. C., 596, and *S. v. Tyson,* 133 N. C., 692, it must be left largely to the discretion of the judge at what stage of the case he will interfere to protect a party against any abuse of privilege by counsel. If the offense is aggravated, it may call for immediate action, and it may always be safer to act promptly, and also to give the jury proper caution, in the charge, against any wrong influence of improper remarks made in the heat and zeal of debate, but, at least, it is a case for the exercise of a sound and wise discretion and for full provision against harm to the injured party. Counsel, too, should be careful lest they spoil a verdict, otherwise perfectly good, by intemperate utterances or immoderate speech. A party, or witness, should not be subjected unjustly to abuse, which is calculated to degrade him or to bring him into ridicule or contempt, and when this occurs he is clearly entitled to the protection of the court, when he asks for it in proper time, and sometimes, perhaps, when he does not, for the court should extend it voluntarily, in the exercise of its judgment and, if necessary, in order that the trial may proceed fairly and impartially and lead to a just result. We have adverted to this matter again because of the comparative frequency of such exceptions as this one. In this case the judge acted quickly and administered a proper caution. *S. v. Hill,* 114 N. C., 780. Counsel, no doubt, was exasperated by the alleged conduct of the witness on the stand towards him, and was in a measure, excusable for what he said, under the influence of the supposed provocation, and certainly does not seem to have been blamable for any intentional excess of description or denunciation. We are not ready to say that abuse by counsel may not be so gross, sometimes, as to require the court to interfere of its own volition, without any appeal from a party, but this question is not before us. See *S. v. Tyson, supra;*

15—173

*S. v. Davenport, supra.* The remarks of counsel were checked by the judge, and what the attorney afterwards said was addressed to the court and not to the jury. We cannot see that any harm was done. It was sufficient that the judge promptly intervened and stopped counsel in a proper manner, and his language was explicit, positive, and peremptory enough.

There was no error in the rulings of the court upon the questions of evidence, and the judge was right in confining the trial to the material questions in controversy.

The judgment will be modified as herein indicated.

Modified.