MRS. R. J. WILLIAMS v. MRS. CATHERINE (D. C.) WILLIAMS AND HUSBAND, D. C. WILLIAMS (ORIGINAL PARTIES DEFENDANT), AND ENOS T. EDWARDS, TRUSTEE (ADDITIONAL PARTY DEFENDANT).

(Filed 23 January, 1942.)

1. **Fraud § 5: Cancellation of Instruments § 2—It is duty of party signing instrument to ascertain its contents unless prevented from doing so by fraud.**

Plaintiff mortgagee's evidence tended to show that defendant mortgagor promised to obtain a new loan and turn over the proceeds to plaintiff in partial satisfaction of her debt, and execute notes and a second mortgage for the balance, plaintiff to release her mortgage so that the new loan could be obtained, that the agent acting for plaintiff in the transaction brought a "creditor's agreement" to plaintiff's house, stated he was in a hurry, and that the paper would have to be signed in order to obtain the refinancing loan, and that plaintiff instructed her daughter to sign the paper, and herself signed it with her mark, and further that the agent

did not read same and plaintiff made her mark without requesting that the instrument be read to her. *Held:* The evidence is insufficient to be submitted to the jury upon plaintiff's contention that her execution of the agreement was obtained by fraudulent misrepresentations as to what she was signing, or plaintiff's contention that she signed same through her own mistake, since a party will be held bound by his signature unless he shows that he was willfully misled or misinformed as to the contents of the instrument or that they were kept from him in fraudulent opposition to his request.

2. **Cancellation of Instruments § 2: Fraud § 3—**

Ordinarily, an unfulfilled promise cannot be made the basis of an action for fraud, but when the promisor, at the time of making the promise, has a present intent not to fulfill same when the time for performance arrives, so that the promise constitutes a misrepresentation of a subsisting fact, such promise will support an action for fraud when made with the intention that it should be acted upon and is acted upon to the promisee's injury.

3. **Same—Evidence held insufficient to show that at time of making promise the promisor had present intent not to fulfill same.**

Plaintiff mortgagee's evidence tended to show that defendant mortgagor promised to obtain a new loan and turn over the proceeds to plaintiff in partial satisfaction of her debt, and execute notes and a second mortgage for the balance, plaintiff to release her mortgage so that the new loan could be obtained. In closing out the new loan plaintiff executed a "creditor's agreement" constituting a complete discharge of the debt and containing an agreement by plaintiff to accept in full satisfaction of the debt proceeds of the loan and not to take any further notes, secured or unsecured. It did not appear that defendant had any knowledge of the existence or contents of the "creditor's agreement," and plaintiff contended she executed same without knowing its contents. The first indication of an unwillingness on the part of defendant to execute the second mortgage occurred after the new deed of trust had been signed, the check cashed, and the original notes and mortgage canceled. *Held:* In plaintiff's action attacking the "creditor's agreement" for fraud, the evidence is insufficient to be submitted to the jury upon plaintiff's contention that defendant's execution of the "creditor's agreement" was obtained by fraudulent promises to execute notes and a second mortgage for the balance of the debt, since there is no evidence to sustain an inference that defendant did not intend, at the time she made it, to perform her promise to execute the notes and second mortgage when the time for performance arrived, mere proof of nonperformance being insufficient to establish the necessary fraudulent intent.

4. **Mortgages § 28—**

Where the *cestui* executes without fraudulent inducement an instrument in which she agrees to the cancellation of the deed of trust, she may not thereafter contend that the trustee was without authority to cancel the deed of trust, since she cannot complain that the trustee did that which she herself had agreed to.

5. **Same—**

Possession of the papers by the trustee raises a presumption of his authority to cancel the deed of trust of record. C. S., 2594.

**6. Cancellation of Instruments § 9—**

In an action to set aside an instrument for fraud, plaintiff may not assert mutual mistake or want of consideration for the execution of the instrument unless such matter is specifically pleaded, since a party demanding equitable relief must specifically allege the facts upon which his remedy is predicated.

APPEAL by plaintiff from *Ervin, Special Judge,* at 9 June, 1941, Extra Civil Term, of MECKLENBURG.  Affirmed.

Plaintiff alleged, in substance, that she was the holder of a deed of trust, a first lien, on certain lands which had been sold to the *feme* defendant by plaintiff in August, 1938, for $3,750—$250 in cash and the balance in secured notes; that upon delinquency in the first payment on the notes secured by this deed of trust, it was suggested by the *feme* defendant that she apply to the Federal Land Bank for a loan to be secured by a deed of trust on these lands, and that the proceeds from this loan be applied to the payment of the debt due the plaintiff, the balance to be paid by notes secured by a second deed of trust; that this was agreed to and such loan was obtained in the amount of $1,800, which sum, less expenses, amounted to $1,729.50, and was paid to the plaintiff, at which time plaintiff, relying on defendant's promise to execute notes for the balance and a second deed of trust securing them, relinquished possession of the notes and first deed of trust which she held so that they could be canceled and thus make the deed of trust held by the Land Bank a first lien on the land; and that before the loan from the Land Bank was consummated the plaintiff had signed, upon defendant's representation to her that it was necessary for the completion of the loan, a paper the contents of which she was unaware, being illiterate.

The paper which plaintiff signed proved to be a release or discharge by her of the debt which defendant had owed her, and further contained an agreement to accept in full satisfaction of the debt the proceeds of the loan, not to take any further notes, secured or unsecured, for the debt discharged or the balance remaining after payment on the debt of the proceeds from the Land Bank loan, and to cancel and mark paid "all instruments, papers, and records representing, evidencing and securing all indebtedness and obligations" owed to plaintiff by defendant.  This is commonly known as a "creditor's agreement" or "scaledown agreement."

It was further alleged that plaintiff's signature on the release was obtained through the fraud and misrepresentation of the defendants, Mrs. D. C. Williams and husband, and that the cancellation of the notes and deed of trust by the defendant Edwards, trustee, was done without authority, in that the cancellation was directed to be done only on the express condition that the *feme* defendant would first execute notes and second deed of trust for the balance due.

At the close of all the evidence, defendants renewed their motion for judgment as of involuntary nonsuit, which was granted, and judgment given accordingly.   From this judgment plaintiff appeals.

*Henry L. Strickland and W. C. Davis for plaintiff, appellant.*
*G. T. Carswell and Joe W. Ervin for defendants, appellees.*

SEAWELL, J.   The main point at issue is whether there was evidence sufficient to submit to the jury on the question of fraud or misrepresentation practiced on the plaintiff by the *feme* defendant in obtaining plaintiff's signature to the "creditor's agreement" which was introduced in evidence.

If this signature was properly obtained, the case as to the defendants is disposed of, for the paper contains an agreement to do all those things from which plaintiff now seeks to be relieved—to discharge the debt of defendant and to cancel paper evidences thereof, and not to take notes or a second lien for the balance due.

Plaintiff contends that the evidence is susceptible of the inference either that through defendant's misrepresentations as to what plaintiff was signing, or through plaintiff's own mistake, her signature was obtained on the paper; or that through defendant's fraudulent inducements and promises to execute notes and a second mortgage, plaintiff was induced to sign the paper.

As to the first contention, all that the evidence shows is that Brown Bowlin, who, as may be inferred from the evidence, acted as plaintiff's agent throughout the transaction between plaintiff and defendant, brought the paper out to Mrs. R. J. Williams' home and "said it would have to be signed before they could do anything with the Federal loan" (quoting from Mrs. R. J. Williams' testimony at the trial); that Bowlin was evidently in a hurry and told the plaintiff's daughter "to hurry up and sign it—that he had to go back" (quoting from testimony of Eunice Williams, plaintiff's daughter); that Mrs. Williams, the plaintiff, who could neither read nor write, told her daughter to sign the paper, and herself signed it with her mark, and at no time asked that the paper be read to her or its contents explained; that Bowlin himself, who we assume had been acting as her agent throughout the transactions, did not read the paper, nor ask the person from whom he got it (it is not clear from the evidence who this was) to explain its contents to him. There is no evidence whatever of any attempt on the part of anyone to keep the contents or significance of the paper from the plaintiff or to deceive her with respect thereto.

In this State it is held that one who signs a paper writing is under a duty to ascertain its contents, and in the absence of a showing that he

was willfully misled or misinformed by the defendant as to these contents, or that they were kept from him in fraudulent opposition to his request, he is held to have signed with full knowledge and assent as to what is therein contained. *Dellinger v. Gillespie,* 118 N. C., 737, 24 S. E., 538; *Griffin v. Lumber Co.,* 140 N. C., 514, 519, *et seq.,* 53 S. E., 307, 309; *Colt v. Kimball,* 190 N. C., 169, 129 S. E., 406; *Furst v. Merritt,* 190 N. C., 397, 402, 130 S. E., 40, 43; *Breece v. Oil Co.,* 211 N. C., 211, 189 S. E., 498. If unable to read or write, he must ask that the paper be read to him or its meaning explained. *School Committee v. Kesler,* 67 N. C., 443. This the plaintiff or her agent did not do, according to the evidence, although they were not deprived of the opportunity therefor. This being true, plaintiff's first contention is untenable.

As to plaintiff's second contention—that concerning defendant's allegedly fraudulent promise to execute notes and a second deed of trust as an inducement to sign—the evidence reveals that Mrs. Williams, defendant, agreed to execute these notes and security, and that Mrs. Williams, plaintiff, at all times relied on this promise; that in the negotiations with Mr. McDougle, the attorney representing the Land Bank, the promise of the defendant to execute a second deed of trust was fully discussed, and defendant said nothing to indicate that she did not intend to keep her promise; that McDougle told all the parties concerned, excepting Mrs. R. J. Williams but including Bowlin, plaintiff's agent, and Enos Edwards, trustee under the first deed of trust, that a second mortgage was contrary to the bank's rules, and that if one was executed it should be done "unbeknown to him" or to the bank, and should not be recorded; but nowhere does it appear that he stated that a second mortgage could not be had, nor does it appear that Mrs. D. C. Williams, defendant, had any knowledge of the existence or contents of the paper writing—the release—which Bowlin took to Mrs. R. J. Williams, plaintiff, to sign. It also appears in the evidence that Bowlin instructed Edwards, the trustee, to draw up the notes and second deed of trust for the balance due against the advice of Edwards, although Edwards at that time had no knowledge of the paper writing signed or to be signed by plaintiff. The first indication of an unwillingness on defendant's part to execute the notes and second deed of trust, as promised, appears, according to the evidence, *after* the paper had been signed, the check cashed, and the original notes and deed of trust canceled.

It is generally held, and is the law in this State, that mere unfulfilled promises cannot be made the basis for an action of fraud. *Trust Co. v. Yelverton,* 185 N. C., 314, 117 S. E., 299; *Shoffner v. Thompson,* 197 N. C., 664, 150 S. E., 195; Annotations, 51 A. L. R., 49; 68 A. L. R., 636; 91 A. L. R., 1296; 23 Am. Jur., Fraud and Deceit, sec. 38, and cases cited. If, however, a promise is made fraudulently—that is, with

no intention to carry it out, thus being a misrepresentation of a material fact, the state of the promisor's mind, and with intention that it shall be acted upon, and it is acted upon to the promisee's injury—then, it will sustain an action based on fraud and misrepresentation, *Howard v. Howe* (C. C. A. 7th), 61 F. (2d), 577; *Cerny v. Paxton, etc., Co.,* 78 Neb., 134, 110 N. W., 882; *Blake v. Blackley,* 109 N. C., 257, 13 S. E., 786; *Massey v. Alston,* 173 N. C., 215, 91 S. E., 964; *Trust Co. v. Yelverton, supra; Erskine v. Motors Co.,* 185 N. C., 479, 491, 117 S. E., 706, 712; *McNair v. Finance Co.,* 191 N. C., 710, 133 S. E., 85; *Clark v. Laurel Park Estates,* 196 N. C., 624, 146 S. E., 584; Annotations, 51 A. L. R., 63; 68 A. L. R., 637; 91 A. L. R., 1297; 23 Am. Jur., Fraud and Deceit, sec. 106, and cases cited, and the plaintiff will be entitled to legal or equitable relief, *Hill v. Gettys,* 135 N. C., 373, 47 S. E., 449; *Massey v. Alston, supra; Erskine v. Motors Co., supra,* at 494, S. E. at 713. But here, after a careful and minute examination of the evidence we can find nothing to indicate or warrant the inference that defendant did not intend, at the time she made it, to perform her promise when time for performance arrived. Mere proof of nonperformance is not sufficient to establish the necessary fraudulent intent. *Maguire v. Maguire,* 171 Minn., 492, 214 N. W., 666; Annotations, 51 A. L. R., 163; 68 A. L. R., 648; 91 A. L. R., 1306.

Plaintiff's further allegation that the cancellation of the notes and first deed of trust by the trustee, Edwards, was without authority, is thus disposed of; for if plaintiff's signature to the release was not obtained through fraud, of which there is no evidence as the case now stands, she had agreed in that instrument to "mark paid, cancel and satisfy all instruments, papers and records evidencing and securing any and all indebtedness and obligations of and claims and liens against" defendant or against the property offered by defendant as security for the Land Bank loan. If she, through the trustee, inadvertently did that which she had agreed to do, she cannot now complain. If this, however, were not enough as a ratification of the trustee's unauthorized act, still, it is nowhere shown that the act was unauthorized. The evidence is indeed so sparse on the point of authorization that we can only presume, from his possession of the papers, that his acts were with authority. C. S., 2594 (Michie's Code, 1939).

It has been suggested that the plaintiff might have shown a mutual mistake between herself and defendant in the execution of the "creditor's agreement," or that there might be a failure or lack of consideration for its execution, but the state of the pleadings and of the evidence is not such as to permit or warrant our consideration of these questions. *Buchanan v. Harrington,* 141 N. C., 39, 53 S. E., 478.

The judgment as of involuntary nonsuit was proper, and is
Affirmed.