LEWIS W. DONAVANT v. ALLEN S. HUDSPETH, M.D.

No. 8421SC850

(Filed 18 June 1985)

**Evidence § 29.3— admissibility of hospital records**

In a medical malpractice action, various hospital records and correspondence between physicians indicating that a catheterization was performed on plaintiff shortly after a coronary bypass operation was performed on plaintiff by defendant surgeon because of a concern that vein grafts may have been sutured in unreversed should have been admitted under the business records exception to the hearsay rule. Also, the hospital records were admissible to show the basis of opinions formed by plaintiff's expert witnesses.

APPEAL by plaintiff from *Long, James M., Judge*. Judgment entered 28 July 1983 in Superior Court, FORSYTH County. Heard in the Court of Appeals 5 April 1985.

In March 1979, plaintiff consulted Dr. Joseph Gaddy, a cardiologist, concerning chest pains. Dr. Gaddy examined plaintiff and recommended coronary bypass surgery. Because Dr. Gaddy's hospital had no facilities for heart bypass operations, Dr. Gaddy referred plaintiff to Dr. Fred Kahl, another cardiologist, at North Carolina Baptist Hospital. Dr. Kahl performed diagnostic tests and agreed with Dr. Gaddy that bypass surgery was necessary. Dr. Kahl recommended defendant Hudspeth of Baptist Hospital to perform the surgery.

Immediately following the bypass surgery on 29 March 1979, defendant summoned Dr. Kahl to perform an emergency catheterization procedure to check the blood flow through the veins to the heart. Defendant and Dr. Kahl were satisfied from the results of this procedure that there was an adequate blood flow to the heart.

By 1982, four of the five grafts inserted by defendant had totally occluded. Another coronary bypass operation had to be performed by another surgeon to replace these grafts.

Plaintiff instituted this action alleging, *inter alia*, that defendant was negligent in performing the coronary bypass operation by improperly positioning vein grafts "backwards," which led to the closing of the veins. At the conclusion of trial, the jury found that defendant was not negligent. From judgment entered upon the jury's verdict, plaintiff appeals.

*Young, Haskins, Mann, Gregory & Young, by Robert W. Mann and George O. Burpeau, III, for plaintiff appellant.*

*Petree, Stockton, Robinson, Vaughn, Glaze & Maready, by J. Robert Elster, Michael L. Robinson and J. Stephen Shi, for defendant appellee.*

JOHNSON, Judge.

The dispositive issues on appeal are whether the trial court erred (1) in excluding evidence of a telephone conversation Dr. Gaddy had with Dr. Kahl two or three days after the surgery, in which Dr. Kahl indicated the emergency catheterization was performed because of a concern that the veins had not been properly reversed and (2) in excluding evidence of hospital records which indicated the emergency catheterization had been performed because of a concern that the veins had been placed in backwards. For the following reasons, we hold the court erred in excluding this evidence and award plaintiff a new trial.

We first address the exclusion of the entries in the hospital records. The excluded evidence consisted of the following: (1) A report of the catheterization results prepared by Dr. Lynn Orr, Jr. and signed by Dr. Kahl, which indicated that the emergency catheterization had been performed because "Dr. Hudspeth apparently was concerned about the possibility that the saphenous vein grafts had been sutured in unreversed"; (2) a letter from Dr. Kahl to Dr. Gaddy dated 2 April 1979, in which Dr. Kahl stated defendant requested Dr. Kahl to perform a repeat arteriogram immediately after surgery "(b)ecause of concern that the saphenous vein grafts were not reversed when they were inserted"; (3) a letter from Dr. Kahl to Dr. Gaddy dated 11 June 1979 in which Dr. Kahl

stated plaintiff underwent selective graft angiography several hours following surgery "(b)ecause of the question about whether the vein grafts had been reversed at the time of surgery"; (4) an admission history and physical prepared by a resident and signed by Dr. Kahl, which stated that a second catheterization for coronary angiography had been performed several hours after surgery "as there was some question as to whether the veins had been placed with the grafts in reverse position (i.e. with valves obstructing the flow)"; (5) a report of the results of another catheterization procedure performed 6 June 1979, which was prepared by Dr. Orr and signed by Dr. Kahl, and which indicated that the emergency arteriograms were performed immediately after surgery because defendant "apparently was concerned about the possibility that the vein grafts had been sutured in unreversed"; and (6) a discharge summary signed by Dr. Kahl which indicated that after plaintiff's surgery "there was some question of whether the veins had been reversed." The trial court excluded these entries because they were hearsay.

One of the well defined exceptions to the hearsay rule is the business records exception. 1 H. Brandis on North Carolina Evidence sec. 155 (1982). A hospital record, of course, is a business record, and is admissible into evidence upon the laying of a proper foundation. G.S. 8-44.1; *Sims v. Insurance Co.*, 257 N.C. 32, 125 S.E. 2d 326 (1962). The Court in *Sims* remarked with regards to the trustworthiness of hospital records:

> It is a matter of common knowledge, we think, that modern hospitals are staffed by medical, surgical and technological experts who serve as members of a team in the diagnosis and treatment of human ills and injuries. The hospital record of each patient is the daily history made in the course of examination, diagnosis and treatment. The welfare, even the life of the patient, depends upon the accuracy of the record. And the records, as evidence, are more credible perhaps, as to accuracy, than the independent recollection of the physicians, surgeons and technicians who make them. Motive for falsification is lacking.

257 N.C. at 35, 125 S.E. 2d at 329. A proper foundation for admission of the records consists of testimony from a hospital librarian or custodian of the records or other qualified witness as to the

identity and authenticity of the record and the mode of its prep-
aration, including testimony that the entries were made at or
near the time of the act or event recorded, that the entries were
made by persons having personal knowledge of the event or act,
and that the entries were made *ante litem motam. Id.* The court,
however, should exclude from jury consideration entries which
amount to hearsay on hearsay. *Id.*

Defendant argues the evidence was properly excluded for
two reasons: (1) the preparer of the records did not have personal
knowledge of the matters contained in the records; and (2) the en-
tries constituted double hearsay. While the reports may have
been prepared by an intern or resident, the reports were signed
by Dr. Kahl. In the absence of fraud, one who signs a writing is
presumed to do so with full knowledge and assent as to its con-
tents. *Williams v. Williams*, 220 N.C. 806, 18 S.E. 2d 364 (1942);
*State v. King*, 67 N.C. App. 524, 313 S.E. 2d 281 (1984). The let-
ters, of course, were written by Dr. Kahl. As indicated earlier,
hospital records are trustworthy and inherently reliable. Further,
statements made by one physician to another for purposes of
diagnosis and treatment are inherently reliable. *Booker v. Duke
Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979). Given the
reliability of these records, we hold the court erred in excluding
them. *See State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971).

In addition, the hospital records were admissible to show the
basis of the opinions formed by the plaintiff's expert witnesses. In
*State v. Wade*, 296 N.C. 454, 251 S.E. 2d 407 (1979), the Court held
that a physician, as an expert witness, may give his opinion,
based upon, among other things, information supplied him by
others, if such information is inherently reliable even though it is
not independently admissible into evidence, and the expert may
testify as to the information he relied upon in forming his opinion
for the purpose of showing the basis of his opinion. Likewise,
while the telephone conversation between Dr. Gaddy and Dr.
Kahl in which Dr. Kahl gave the reason for performing the
emergency catheterization may not have been admissible as sub-
stantive evidence, it was admissible to show the basis for Dr.
Gaddy's opinion.

Plaintiff also contends that the court erred in excluding
testimony that defendant's expert witness was critical of Dr.

Kahl's record keeping. We fail to perceive how the exclusion of this testimony was prejudicial to plaintiff.

The exclusion of the hospital records, standing alone, is sufficient to justify an award of a new trial. Had the evidence not been excluded, the jury may very well have reached a different result. In addition, we note the court's instructions to the jury followed the pattern jury instructions struck down by the Supreme Court in *Wall v. Stout*, 310 N.C. 184, 311 S.E. 2d 571 (1984). At the time of trial, the decision in *Wall v. Stout* had not been rendered.

New trial.

Judges WHICHARD and EAGLES concur.