Britt v. Britt

BETSY BRACY BRITT AND ROBERT DIXON BRITT v. BILLY B. BRITT AND PEGGY G. BRITT, JOINTLY AND SEVERALLY, AND MAGNOLIA HILL, INC.

No. 8515SC1044

(Filed 5 August 1986)

### 1. Quasi Contracts and Restitution §§ 1.1 and 1.2— implied contract and quasi contract—sufficiency of evidence

In an action arising from the purchase of a farm by defendants and the operation of the farm by plaintiffs, the trial court erred by denying defendants' motions for a directed verdict and for a judgment n.o.v. where, although there was considerable confusion over the theories under which plaintiffs were proceeding, plaintiffs contended that the facts gave rise to an implied contract and *quantum meruit*; plaintiffs admitted in their brief the existence of a special agreement between the parties, which defeats a claim for implied contract; and there was insufficient evidence to answer the key question of the parties' ownership interest in and relationship to the property so that plaintiffs' proof of value unjustly retained and realized by defendants was defective.

### 2. Fraud § 12— promise to accrue stock in corporation in return for labor and mortgage payments—evidence of fraud insufficient

The trial court erred by denying defendants' motion for a directed verdict on a claim for fraud where plaintiff alleged that defendant had agreed to accrue stock for her in a corporation but there was no evidence of material misrepresentation in that plaintiff's evidence merely established a nebulous inquiry by defendant which was at best a promise of future intent; there was nothing to give rise to an inference that defendant intended for plaintiff to do anything in reliance upon the conversation; and there was no evidence that plaintiff in any way changed her position or suffered any injury from the alleged representation.

APPEAL by defendants from *Bowen, Judge.* Judgment entered 6 February 1985 in Superior Court, ORANGE County. Heard in the Court of Appeals 11 March 1986.

On 29 April 1983, plaintiff Betsy Britt filed her original complaint against defendants Billy B. Britt, Peggy G. Britt and Magnolia Hill, Inc. In Count I of her complaint, plaintiff alleged that she had equitable title to Magnolia Hill Farm and defendants Billy B. Britt and Peggy G. Britt held legal title to Magnolia Hill Farm in trust for her. On 20 October 1983, plaintiff, pursuant to Rule 19, N.C. Rules Civ. P., moved the court to join as a party plaintiff, her husband, Robert Dixon Britt. Robert Dixon Britt is the brother of defendant Billy Britt. There were numerous pre-trial motions, amendments to plaintiff's complaints, and counterclaims

made by defendant. On 5 January 1985, the parties stipulated to the following issues to be tried.

### Plaintiff's Case

*Issue #A*: Do the facts and circumstances require the imposition of a parol trust on the real property and improvements known as Magnolia Hill Farm for the benefit of the plaintiff, Betsy Britt?

*Issue #B*: Have the defendants, Billy B. Britt, Peggy G. Britt and or Magnolia Hill, Inc. been unjustly enriched by the plaintiff, Betsy Britt's expenditure of money and labor for the reduction of mortgage, principal and interest, repair, maintenance, and improvement of the real property and improvements known as Magnolia Hill Farms, requiring an award of compensatory damages to the plaintiff Betsy B. Britt, and if so what amount of damages are recoverable by the plaintiff?

*Issue #C*: Did the defendants, Billy B. Britt, and or Peggy G. Britt willfully defraud or conspire to defraud and in fact defraud the plaintiff Betsy B. Britt by promising her she would acquire stock in Magnolia Hill, Incorporated corresponding to the value of payments by Betsy B. Britt on the notes secured by first and second deeds of trust on the real property and improvements known as Magnolia Hill Farms, requiring an award of compensatory damages for the plaintiff, Betsy B. Britt? If so, did the defendant's fraudulent representation damage the plaintiff Betsy Britt and if so, in what amount was the plaintiff damaged? Does the conduct of defendants Billy B. Britt and Peggy G. Britt or either of them justify an award of punitive damages?

*Issue #D*: Did Peggy G. Britt and/or Billy B. Britt and/or Robert Britt conspire to fraudulently induce plaintiff, Betsy Britt to continue to make the mortgage payments on Magnolia Hill Farm, as well as to make or continue to make repairs, maintenance and improvements to Magnolia Hill Farm, and provide her labor and services? If so, was the plaintiff Betsy Britt damaged by any acts committed by the defendants Billy B. Britt and/or Peggy G. Britt in furtherance of the conspiracy? If so, in what amount was the plaintiff Betsy Britt damaged? Does the conduct of the defendants Billy B. Britt

or Peggy G. Britt or either of them justify an award of punitive damages?

### Defendant's Case in Defense

*Issue #1*: Failure to satisfy condition

Have Betsy B. Britt and Robert D. Britt failed to satisfy all conditions precedent to their obtaining title to Magnolia Hill Farm within a reasonable time?

*Issue #2*: Statutes of Limitations

Are the claims of Betsy B. Britt and Robert D. Britt barred in part, by the applicable statutes of limitation?

*Issue #3*: Fraud in the Inducement

Did Betsy B. Britt and Robert D. Britt fraudulently induce Billy B. Britt into putting them into possession of Magnolia Hill Farm?

*Issue #4*: Conditions Precedent; Mutuality of Obligation

Have Betsy B. Britt and Robert D. Britt fulfilled all their obligations to Billy B. Britt and Peggy G. Britt, the performance of which are conditions precedent to the rendering of any performance of any obligations by Billy B. Britt and Peggy G. Britt to Betsy B. Britt and Robert D. Britt.

*Issue #5*: Unclean Hands

Are the claims of Betsy B. Britt and Robert D. Britt barred by their own unequitable conduct?

### Defendants' Case in Counterclaim

*Issue #1*: Fraud in the Inducement

Did Betsy B. Britt and Robert D. Britt proximately cause damage to Billy B. Britt and Peggy G. Britt? If so, in what amount?

*Issue #2*: Breach of Agreement

Have Betsy B. Britt and Robert D. Britt breached an agreement with Billy B. Britt and Peggy G. Britt (a) to pay all debt service, taxes and insurance premiums on account of Billy B.

Britt and Peggy G. Britt, (b) to maintain, repair and preserve Magnolia Hill Farm and its improvements in good condition, and (c) to pay Billy B. Britt and Peggy G. Britt an additional sum of $1,000.00 per month as rent? If so, what damages have been sustained by Billy B. Britt and Peggy G. Britt as a proximate result of the breach?

*Issue #3*: Conversion

Has Betsy B. Britt willfully converted to her own use certain personalty owned by defendants? If so, what damages have been sustained by defendants as a proximate result of the conversion?

*Issue #4*: Unjust Enrichment

Did defendants provide Betsy B. Britt and/or Robert D. Britt with a residence and means of livelihood under such circumstances that Betsy B. Britt and Robert D. Britt should be required to reimburse defendants? If so, what amount(s) are defendants entitled to recover from Betsy B. Britt and Robert D. Britt?

. . . .

### Plaintiff's Case in Defense of Defendants' Counterclaims

*Issue #2*: Is the defendants' claim for rent in the amount of $1,000.00 per month barred by the statute of fraud[s], the statute of Limitations, and Laches? If any agreement existed requiring the plaintiffs Betsy Britt, and Robert Dixon Britt to pay all debt service, taxes and insurance premiums on account of Billy B. Britt and Peggy G. Britt, is defendants' claim barred by waiver, laches, and equitable estoppel?

*Issue #3*: Is defendants' claim for conversion barred by the applicable statute of limitations?

*Issue #4*: Is defendants' claim for unjust enrichment barred by defendants' failure to plead facts and circumstances sufficient to raise such claim? Is defendants' claim for unjust enrichment barred by waiver, laches, and equitable estoppel?

On 28 January 1985, this case was tried before a jury. Defendants moved for directed verdicts on all claims after plaintiff's

presentation of evidence and renewed said motion at the close of all the evidence. The trial court denied defendants' motions. The trial court submitted to the jury plaintiff's issues of parol trust, unjust enrichment and fraud. Defendants' counterclaims were not submitted to the jury.

On 6 February 1985, the jury returned with its verdict. The jury answered the parol trust issue in favor of defendants, but awarded plaintiff $363,616.00 for her unjust enrichment claim. On the fraud issue plaintiff was awarded $1.00 in nominal damages and $400,000.00 in punitive damages. The total amount awarded to plaintiff was $763,617.00. On 15 February 1985, defendants moved the court for entry of judgment notwithstanding the verdict and, in the alternative, for a new trial. On 18 March 1985, the trial court denied defendants' motions. Defendants appeal.

*Boyce, Mitchell, Burns & Smith, P.A., by Carole S. Gailor and Susan K. Burkhart, for plaintiff appellee.*

*Jordan, Brown, Price & Wall, by Charles Gordon Brown and William D. Bernard; Ward & Smith, P.A., by Robert D. Rouse, Jr., and Donald T. Ellington, for defendant appellants.*

JOHNSON, Judge.

The facts of this case are greatly in dispute. However, an understanding of the relationship of the parties was established by the evidence as follows:

Plaintiff met Robert Britt on New Year's eve 1976 in Little Rock, Arkansas at a night club where Robert was performing with a band of musicians. Plaintiff was then married to her ex-husband, David Ray. After taking several trips together, plaintiff agreed to move to North Carolina where Robert lived. In 1977, plaintiff moved to North Carolina and brought with her a Chevrolet Blazer, a horse trailer, a horse, her saddle, some tack, and approximately $630.00 in cash. When plaintiff arrived in Chapel Hill, North Carolina she rented an apartment in her own name, whereupon Robert Britt moved in with her. In order to avoid aggravating past differences with his brother, defendant Billy Britt, Robert Britt told him that plaintiff and he were married. Plaintiff wore a wedding band and referred to herself as Betsy Britt.

Robert Britt and defendant Billy Britt had disagreed before about Robert sleeping with women out of wedlock.

Defendant Billy Britt employed plaintiff in his Amway business and also sponsored her and Robert as Amway distributors. Plaintiff secured employment with a local stable operation, but her employment was terminated by the owner. At this time defendant Billy Britt was considering the purchase of Magnolia Hills Farm. In July 1977, defendant Billy Britt proposed to his brother that he would purchase the Magnolia Hills Farm and that when plaintiff and Robert achieved the necessary volume of sales to "hit diamond," he would allow them to purchase the farm. On 9 August 1977, defendant Billy Britt purchased Magnolia Hills Farm and the farm equipment thereon. Plaintiff and Robert Britt took residence on the farm. There has been an equestrian center existing on Magnolia Hills Farm since 1972. In July 1977, plaintiff became pregnant. During this time period plaintiff obtained a divorce from David Ray. On 26 October 1977, unbeknown to defendant Billy Britt, plaintiff and Robert Britt were married in a secret ceremony that took place in Dillon, South Carolina. In August 1977, defendant Billy Britt delivered a mortgage loan payment book to plaintiff whereupon she began making mortgage payments from the proceeds received from the stable operation, which was known as Magnolia Hills Stable. Plaintiff and Robert Britt had a stormy marriage. In March 1983, plaintiff obtained a domestic violence order to restrain Robert Britt from coming upon Magnolia Hills Farm. Defendant Billy Britt asked plaintiff to leave the farm, whereupon she refused to leave and instituted her lawsuit.

In the record on appeal defendants list seventy-six (76) assignments of error and one hundred six (106) exceptions pertaining to the trial court's rulings on evidentiary matters, motions, and jury instructions. However, defendants do not discuss fifteen (15) of their assignments of error in their brief and therefore they are deemed abandoned. Rule 28(a), N.C. Rules App. P.

[1] Defendants assign error to the trial court's denial of their motions for a directed verdict and for judgment notwithstanding the verdict. Defendants contend that the evidence was insufficient to support plaintiff's claims of unjust enrichment and fraud. The purpose of a motion for a directed verdict, pursuant to Rule 50,

N.C. Rules Civ. P., is to test the legal sufficiency of the evidence to take the case to a jury and to support a verdict for plaintiffs. In passing upon a motion for a directed verdict, the trial court must consider the evidence in the light most favorable to the non-movant. *Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973). In our review of the trial court's ruling on defendants' motion we must also consider the evidence in the light most favorable to the non-moving party. *Wilson v. Bob Robinson's Auto Serv., Inc.*, 20 N.C. App. 47, 200 S.E. 2d 393 (1973). Bearing these principles in mind we now turn to our review of the trial court's rulings upon defendants' motions for directed verdict on plaintiff's claim based on the equitable doctrine of unjust enrichment.

The doctrine of unjust enrichment has been stated as follows:

When a party to a special contract, unenforceable by reason of the statute of frauds, expends money as contemplated by the contract, and the other party to the contract consciously receives or accepts the benefits thereof and then fails or refuses to perform his part of the special contract, the law implies a promise and obligation to repay the money so expended.

*Wells v. Foreman*, 236 N.C. 351, 354, 72 S.E. 2d 765, 767 (1952). The Court in *Wells, supra,* went on to state the necessary allegations of unjust enrichment as follows:

Thus it was necessary for plaintiffs to plead the special contract and defendant's breach thereof as a basis for the recovery of the money depended in reliance thereon. This includes the allegation of the essential facts and circumstances which (1) prompted the parties to enter into the contract; (2) induced the plaintiffs to make the payments on the mortgage indebtedness and expend money in the repair and improvements of the premises; (3) disclose the conscious acceptance by the benefits thereof; and (4) constitute a breach of the special contract by defendant.

*Id.*, at 354, 72 S.E. 2d at 767.

Defendants first argue that plaintiff Betsy Britt did not have a reasonable expectation of compensation. Defendants' argument suffers from the blurring of the substantive aspect of unjust enrichment and the measure of damages for unjust enrichment;

this is understandable in light of the requirement of proof of damages associated with plaintiff's claims. There appears to have been considerable confusion during trial as to what theories plaintiff was proceeding under and what evidence was applicable to the elements for a parol trust, fraud, and unjust enrichment. The trial court repeatedly analogized the case *sub judice* to an action for recovery upon the theory of improvements under the betterments statute, G.S. 1-340. However, defendants' first argument seems to stem from *Stout v. Smith,* 4 N.C. App. 81, 165 S.E. 2d 789 (1969), wherein this Court explains the various possible measure of damages for claims whereby a party invokes the doctrine of unjust enrichment. The Court set forth that explanation as follows:

> There is a difference between the measure of damages in a claim on express contract, one on implied contract, and one on *quantum meruit.* 'A promise to pay for services is implied when they are rendered and received in such circumstances *as authorize the party performing to entertain a reasonable expectation of payment for them by the party benefited.* However, the law will not imply a promise to pay the value of services rendered and accepted, where there is proof of a special agreement to pay therefor a particular amount or in a particular manner . . .' 'If there is no special agreement as to the amount of compensation and the services are not intended to be gratuitous, the law implies a promise by the employer to pay what services reasonably are worth, which is determined largely by the nature of the work and the customary rate of pay for such work in the community and at the time the work was performed.' 'The measure of recovery for services furnished or goods received under the doctrine of unjust enrichment, as distinguished from the doctrine of contracts implied in fact is the value of the actual benefit realized and retained.'

*Id.* at 84, 165 S.E. 2d at 791-92 (emphasis supplied) (citations omitted).

What exaggerated the parties' and the court's confusion at trial was plaintiff's contention, as stated in her brief, that "the facts in this case give rise to *two theories* of recovery for unjust enrichment: contract implied in fact and contract implied at law

or *quantum meruit*." (Emphasis supplied.) The distinctions drawn between the two theories, as can be seen from *Stout, supra,* are not mere technicalities and may not be ignored. We note the importance of this area of confusion at trial because it also permeates the parties' arguments in this appeal. Moreover, the confusion manifested itself in the trial court's instruction to the jury on the standard of proof. The two theories have distinct elements that must be proved, the measure of damages are different, and a directed verdict may be appropriate on one claim, but not on the other. From our review of the voluminous transcript, the record on appeal, and the parties' briefs, this approach in the presentation of the evidence was not followed at trial.

Plaintiff contends that the facts and circumstances give rise to the two theories, (1) implied in fact contract, and (2) quantum meruit; however, plaintiff does not separately argue the sufficiency of the evidence in connection with each of said theories and did not provide the jury with sufficient evidence to support its verdict. Defendants, in their brief, also make a broad argument against the sufficiency of the evidence to withstand their motion. Intent is disregarded in the case of contracts implied in law and "the liability exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention." 66 Am. Jur. 2d *Restitution and Implied Contracts* sec. 2 (1973). In the case of contracts implied in law or more properly called quasi-contracts, "the promise is purely fictitious and is implied in order to fit the actual cause of action to the remedy." *Id.* As will be discussed *infra,* there was evidence from which the jury could deduce the existence of an agreement between the parties; however, the evidence was insufficient for a jury to find that defendant Billy Britt impliedly promised plaintiff that he would compensate her for her services and improvements to the farm if she did not "hit diamond." With one exception, plaintiff, in her brief, quotes with approval defendants' characterization of the special agreement, which viewed in the light most favorable to the plaintiff was as follows:

> Billy had promised that the farm would change hands when Betsy and Bobby 'hit diamond.' R. p. 3, paragraph (6). In exchange for keeping the place repaired and maintained (T pp. 45, 51-52, 589-590, 607, 716-718) and operating the stable business to carry the farm (T pp 53, 581, 629-630, 633-634,

726-727), Betsy and Bobby were to live there free and keep any surplus income (Tp726). This was the *bargain between the parties.*

(Emphasis in defendants' brief.) Plaintiff, in her brief, admits to the existence of this agreement as follows:

The defendants' description of the parol agreement is consistent with Betsy Britt's own testimony, except that it omits the agreement to repay Defendants for what they 'had in it' (T. p. 46). The plaintiff's other witnesses confirmed the existence of and terms of the agreement.

The presence of this agreement defeats plaintiff's claim on a contract implied in law. *Stout, supra.*

There are no terms of the alleged agreement from which it may be inferred that defendants would compensate plaintiff for improvements to the farm and for her services if she failed to meet the condition precedent of "hitting diamond." In fact, the agreement provides for compensation in terms of plaintiff living rent free and receiving any surplus income in exchange for her services. The evidence showed that with defendants' sponsorship, plaintiff developed an Amway business (B & B Enterprises), that grossed over $500,000.00 in 1982. The evidence in the case *sub judice*, even when viewed in the light most favorable to plaintiff, showed that Magnolia Hills Farm served as a showcase, meeting place, warehouse, and distribution center for her Amway business. Plaintiff argues that defendants' agreement to convey the farm induced them into making mortgage payments and expend funds for the repair and maintenance of the premises. As discussed, *supra*, testimony with respect to the terms of the parol agreement does not support her argument. Moreover, even when viewed in the light most favorable to plaintiff, the evidence adduced at trial did not establish that plaintiff expended her funds to make mortgage payments or repair the premises. The key question, which there was insufficient evidence to answer, is, what are the parties' ownership interests in and relationship to Magnolia Hills Stables, Inc. and Magnolia Hill, Inc. The evidence taken in the light most favorable to plaintiff showed that when plaintiff took residence on the farm there was an equestrian center on the premises of Magnolia Hills Farm which had existed since 1972; that plaintiff offered a different form of riding instruc-

tion when she took residence on the farm; that many of the old clientele did not take their business elsewhere; that defendant Billy Britt provided over $7,000.00 for the initial capitalization for the stable operation; that all losses and income flowing from the stable operation were reported on defendant Billy Britt's income tax returns.

If plaintiff was the owner of the stable operation then she would not be entitled to the value of her services estimated by her expert witness to have a value of $224,415.00 to $338,833.00. If plaintiff were not the owner of the stable operation she would not be entitled to recover the $98,126.00 paid as mortgage payments since the funds were taken from the proceeds of the stable operation. The insufficiency of the evidence led to a myriad of errors with respect to the damages awarded plaintiff which need not be specifically addressed because more importantly the question of the ownership of the stable operation points out a glaring defect in plaintiff's proof of any value unjustly retained and realized by defendants.

Plaintiff maintains that she "performed, in all respects, in accordance with the parol agreement, the proper measure of damages is the reasonable value of her services and expenditures." As stated above, plaintiff would not be entitled to recover the $98,126.00 paid as mortgage payments since the funds were taken from the proceeds of the stable operation. Moreover, as defendants contend, plaintiffs were tenants at sufferance. Their agreement to live on the premises of Magnolia Hills Farm, though it may have assisted their efforts to "hit diamond," was completely separate and apart from the agreement that if they "hit diamond" defendants would be comfortable with conveying title to the farm since plaintiffs, by their achievement of diamond status, would be financially stable enough to purchase the farm. The parties agreed on compensation in the form of "any surplus income."

Defendants further contend that plaintiff failed to prove the amount by which the value of Magnolia Hills Farm was enhanced by reason of her labor and expenditures. We agree. Plaintiff presented evidence that $40,460.99 were expended by her in making improvements, repairs and for maintenance at the farm. Assuming *arguendo* without conceding the fact that the $40,460.99 was expended from plaintiff's funds, there is still no proof of enhanced

value because the measure of recovery is not the cost of repairs. Long ago in *Jones v. Sandlin*, 160 N.C. 150, 75 S.E. 1075 (1912), the North Carolina Supreme Court rejected costs of improvements sought in an equitable action. The Court stated the following:

> The general rule is that if one is induced to improve land under a promise to convey the same to him, which promise is void or voidable, and after the improvements are made he refuses to convey, the party thus disappointed shall have the benefit of the improvements to the extent that they increased the value of the land. . . . The recovery is based not upon the costs of the improvements, but upon the enhanced value of the property. *Weterell v. Gorman*, 74 N.C. 603, in which *Justice Reade* says: 'The value of the improvements to the premises is undoubtedly the correct rule, for very expensive repairs might injure rather than improve them.'

*Id.* at 154, 75 S.E. at 1077 (citations omitted). We hold that the trial court erred in denying defendants' motions for a directed verdict on plaintiff's claims of contract implied in fact and quantum meruit.

[2] Defendants next argue that their motion for a directed verdict on plaintiff's claim for fraud should have been allowed due to the insufficiency of the evidence. We agree.

The elements of an actionable case of fraud that plaintiff should have proved at trial are as follows:

> (a) that defendant made a representation relating to some material past or existing fact; (b) that the representation was false; (c) that defendant knew the representation was false when it was made or made it recklessly without any knowledge of its truth and as a positive assertion; (d) that defendant made the false representation with the intention that it should be relied upon by plaintiffs; (e) that plaintiffs reasonably relied upon the representation and acted upon it; and (f) that plaintiffs suffered injury.

*Johnson v. Phoenix Mutual Life Insurance Co.*, 300 N.C. 247, 253, 266 S.E. 2d 610, 615 (1980). "As a general rule, a mere promissory misrepresentation will not support an action for fraud." *Braun v. Glade Valley School, Inc.*, 77 N.C. App. 83, 87, 334 S.E. 2d 404, 407

(1985). "The rule is that fraud cannot be based on an allegation of a promise of future intent." *Id.* "Here proof of nonperformance is not sufficient to establish the fraudulent intent." *Williams v. Williams*, 220 N.C. 806, 810, 18 S.E. 2d 364, 367 (1941).

Our first line of inquiry is with respect to the sufficiency of plaintiff's evidence that defendant Billy Britt made a misrepresentation relating to some past or existing material fact. Plaintiff, in her brief, contends that "the evidence presented at trial establishes that defendant Billy Britt not only offered to accrue stock on plaintiff's behalf in Magnolia Hill, Inc., he *agreed* to do so." (Emphasis in original.) Plaintiff's testimony regarding defendant Billy Britt's alleged misrepresentation of a material past or existing fact was, in pertinent part, as follows:

Q. Did you ever, state whether or not you ever approached Bill Britt with regard to putting your agreement in writing (the alleged original agreement as set forth *supra.*)?

A. Yes.

Q. When was the first time you did that?

A. I believe it was either December of '78 or January of '79.

Q. What was the, [sic] did you have a conversation with him?

A. Yes.

Q. And what was the conversation?

A. I was on the telephone at my house. It was a telephone conversation. And I had told him that since I was now making the mortgage payments that I felt that I needed something in writing. This was under the advice of my father. When I told him what I was doing and what the arrangement was he said, Betsy you had better get something in writing. So I talked, I called Bill I think and told him that I really wanted something in writing, and he said that that wasn't going to happen; and he said well maybe, I said, 'I'm putting all this money in the farm and well maybe, I said, I'm putting all this money in the farm and all and I'd like some kind of protection. He said, maybe we'll just make you an employee or something. And at that point, I had already put money in the farm and I didn't really want to be an employee from that

point on; and I knew that the farm based on the what the mortgage payments there was no way that I could be paid because everything I was making, I was putting back into the farm so I said, 'No I don't want to do that.' And he said, well we'll work it out.' And I said, 'How will we work it out?' He said, 'Well,' he said, 'I'm forming a corporation and how would you feel about having accruing stock in the corporation each time you made a mortgage payment, then you would be accruing more stock?' So I thought well stock is paper, you know, and *I assumed though that the stock was relative to the property, relative to the actual real estate.* And I didn't know much about stock or anything; but I knew that there would be something on paper; and so I was satisfied with that.

(Emphasis supplied.) Plaintiff further testified that she did nothing different than she had done prior to the alleged conversation. Moreover, plaintiff testified that it was her assumption that the stock related to the real estate. However, plaintiff's testimony shows that this assumption was not warranted. Nothing in plaintiff's testimony about defendant's alleged statements establishes a representation. Defendant Billy Britt denied that he promised plaintiff that she would accrue stock in a corporation that he was forming. Nonetheless, viewing plaintiff's testimony in the light most favorable to her by assuming arguendo that the alleged conversation was as she testified, there is still insufficient evidence of a material misrepresentation of a past or existing fact. Plaintiff's testimony merely establishes a nebulous inquiry made by defendant. The statement attributed to defendant pertained to a corporation that was not yet formed. There was nothing in the statement by which plaintiff or the jury could infer a relationship between the corporation not yet formed and the Magnolia Hills Farm. There was nothing in the statement from which it could be inferred that plaintiff would acquire an ownership interest in the farm through accrual of stock. Plaintiff, as discussed *supra,* did not establish what corporation was the corporation defendant was allegedly forming. Even if Magnolia Hill, Inc. was the corporation plaintiff was allegedly supposed to accrue stock in, there was no connection between that corporation and the farm except that there were allegations that Magnolia Hill, Inc. was an incorporation of the stable operation at the farm. Magnolia Hill, Inc. did

not hold the deed of Magnolia Hills Farm as one of its assets. There were no terms discussed with respect to the value of stock, the amount of stock plaintiff would accrue with each mortgage payment, or when the alleged accrual would begin. As discussed *supra*, plaintiff did not prove the mortgage payments, by virtue of which she claims she was defrauded, were paid from her funds. The lack of proof with respect to misrepresentation of a past or existing fact entitled defendants to a directed verdict on plaintiff's fraud claim. At best the conversation about which plaintiff testified might establish a promise of future intent. *Braun, supra.*

There was nothing in plaintiff's testimony which would give rise to an inference that defendant intended for plaintiff to do anything in reliance upon the alleged conversation. Moreover, plaintiff further testified as follows:

Q. Okay. So what did you do as a result of that conversation?

A. I just kept making the mortgage payments and kept putting more, you know, money into the farm and *just going about my usual routine.*

(Emphasis supplied.) During cross-examination plaintiff testified as follows:

Q. Are you saying that we're dealing with a new agreement now?

A. *No.*

(Emphasis supplied.) Plaintiff's testimony, under extensive cross-examination, was to the effect that she felt vulnerable and was seeking something in writing so that if plaintiff "hit diamond" she would have something to establish the existence of the parties' alleged agreement. Plaintiff's evidence was not sufficient to establish that she reasonably relied upon the alleged conversation to deem that she was accruing stock whereby she was somehow acquiring an ownership interest in the farm. There was evidence that a witness named Pat Mazze assisted Robert Britt with the preparation of a financial statement that represented that Robert Britt held stock in Magnolia Hills, Inc. However, Robert Britt disavowed any knowledge of how this representation came to be included in his financial statement. Moreover, there was no con-

nection established between this financial statement and the alleged telephone conversation between defendant Billy Britt and plaintiff. There was no evidence that plaintiff in any way changed her position in reliance upon the alleged telephone conversation. Nor was there any evidence that plaintiff suffered any injury from the alleged representation made by defendant Billy Britt. The trial court erred in denying defendants' motion for a directed verdict on plaintiff's fraud claim. In light of our decision we need not address defendants' remaining assignments of error. For reasons discussed above, the judgment is

Reversed.

Judges ARNOLD and WHICHARD concur.