JUDY ANN SIDDEN, Plaintiff v. RICHARD BERNARD MAILMAN, Defendant

No. COA99-478

(Filed 2 May 2000)

**1. Divorce— separation agreement—mental state—conflicting evidence**

The trial court did not err by finding that plaintiff's mental state was not impaired at the time a separation agreement was executed and by refusing to rescind the agreement where the court resolved conflicting evidence in favor of defendant.

**2. Divorce— separation agreement—undue influence**

The trial court did not err by refusing to rescind a separation agreement on the ground of undue influence where the parties executed an informal agreement two weeks after their separation

and the formal agreement two weeks later; plaintiff was told at the execution of the formal agreement by defendant's attorney that she could have her attorney review the agreement and she was given time to review it in private; and plaintiff chose to sign the agreement without the advice of an attorney even though she had a business attorney and an accountant who regularly represented her in her psychotherapy practice.

**3. Fraud— pleadings—separation agreement—failure to disclose asset**

The trial court erred by ruling that plaintiff did not plead breach of fiduciary duty in her complaint where plaintiff alleged that she executed a separation agreement at a time when she and defendant were husband and wife, thus sufficiently alleging the existence of a fiduciary duty; and defendant's admission at trial that he did not disclose to plaintiff the existence of his State retirement account is tantamount to an amendment to the complaint that defendant failed to disclose a material asset.

**4. Fraud— separation agreement—failure to disclose retirement account**

The trial court erred by finding that plaintiff had not presented any evidence of a breach of a fiduciary relationship where there was some evidence that defendant failed to disclose the existence of a retirement account before the parties agreed to and executed a separation agreement.

**5. Divorce— separation agreement—not unconscionable**

The trial court did not err by rejecting a claim that a separation agreement was unconscionable where plaintiff abandoned on appeal her argument that the agreement was substantively unfair. Both substantive and procedural unfairness must be shown to support the claim that the agreement is unconscionable.

Appeal by plaintiff from order and judgment filed 29 January 1999 by Judge Alonzo Brown Coleman, Jr. in Orange County District Court. Heard in the Court of Appeals 25 January 2000.

*Sheridan & Steffan, P.C., by Mark T. Sheridan, for plaintiff-appellant.*

*The Brough Law Firm, by G. Nicholas Herman, for defendant-appellee.*

**SIDDEN v. MAILMAN**

[137 N.C. App. 669 (2000)]

GREENE, Judge.

Judy Ann Sidden (Plaintiff) appeals from an order and judgment upholding the validity of a "Contract of Separation and Property Settlement" (the Agreement) between Plaintiff and Richard Bernard Mailman (Defendant) (collectively, the parties).

The evidence shows the parties were married on 21 April 1979. Plaintiff is a psychotherapist and holds a master's degree in Child Development and Family Relations. Defendant is a Professor of Psychiatry at the University of North Carolina (UNC) School of Medicine.

The parties separated on or about 15 August 1996, at which time Defendant moved out of the marital home. At that time Plaintiff told Defendant she was "tired of fighting," he could "have it all," and to "draw up what [he thought was] fair" and she would sign it. Defendant prepared a listing of the parties' assets and liabilities, which did not include Defendant's North Carolina State Employees' Retirement Account (State Retirement Account), worth $158,100.00. Defendant testified this was an inadvertent omission.

On 1 September 1996, the parties met, reviewed, and discussed the listing, and then signed a one-page informal document which outlined the terms of a separation agreement. On 9 September 1996, Defendant retained attorney Wayne Hadler (Hadler) to prepare a final separation agreement, the Agreement at issue in this case. The Agreement formalized the terms of the one-page informal agreement the parties had previously signed, and the Agreement was executed and acknowledged before a notary by the parties on 10 September 1996 at Hadler's office.

At trial, Hadler who holds a Master's degree in Social Work and previously worked for twelve years as a social worker for the Alamance County Mental Health Department, testified he did not see anything about Plaintiff's appearance, demeanor, or behavior that would indicate she was confused or lacked the capacity to enter into the Agreement. Hadler informed Plaintiff he was representing Defendant and could not give her any legal advice, and he encouraged her to have the Agreement reviewed by separate counsel. Hadler explained to Plaintiff she could take as much time as she needed to review the Agreement, and he left her in the conference room of his office to allow her time to review the Agreement in privacy. Although Plaintiff was in regular consultation with her business attorneys and

an accountant from July 1996 to October 1996, she chose not to have an attorney review the Agreement.

After the parties executed the Agreement, Plaintiff directed Defendant to immediately take her to a bank so she could receive the funds due her under the terms of the Agreement. Defendant followed Plaintiff's directions, and the parties have fully performed and complied with the terms of the Agreement.

Defendant testified at trial that several months after the Agreement's execution he came across a statement of his State Retirement Account. Realizing he had inadvertently omitted the State Retirement Account from his listing of assets and from the Agreement, Defendant telephoned Plaintiff to inquire whether she wanted to discuss the State Retirement Account and whether any adjustment should be made to the Agreement. Defendant testified Plaintiff responded she was "going to get more out of [him] than that," and their conversation ended.

Plaintiff testified at trial that she was suffering from hypo-mania and was psychotic and out of touch with reality from the spring of 1996 throughout the events surrounding the execution of the Agreement until her 20 January 1997 admittance into the UNC Memorial Hospital, where she was placed under a suicide watch. In April of 1995, Plaintiff was seeing a psychiatrist, Thomas N. Stephenson, M.D. (Dr. Stephenson), as an individual patient. Dr. Stephenson diagnosed Plaintiff as suffering from depression and anxiety and prescribed an anti-depressant, Zoloft, for Plaintiff. In May of 1996, before the execution of the Agreement, Dr. Stephenson saw Plaintiff for the last time. Dr. Stephenson found Plaintiff was "continuing to do well," but the problems with her husband were continuing.

Dr. Stephenson testified Zoloft can induce hypo-mania. Plaintiff's expert in psychiatry, Jeffrey J. Fahs, M.D. (Dr. Fahs), defined hypomania as a psychiatric condition that is a milder form of mania which is marked by grandiosity, a decreased need for sleep, loquaciousness, and involvement in activities that have a high potential for painful consequences like foolish business investments or buying sprees. Dr. Stephenson saw Plaintiff again on 13 September 1996, and at that time, he thought her judgement was impaired but she was not manic.

Dr. Fahs testified he examined Plaintiff on 10 March 1997 and reviewed her records and summary of treatment. Dr. Fahs opined Plaintiff had exhibited symptoms of a mood disorder that included

depression, mania, and hypo-mania. Dr. Fahs testified Plaintiff "may have had a cognitive understanding" she was signing the Agreement, but she could not truly appreciate the consequences of signing it. Dr. Fahs also stated Zoloft can cause mania or hypo-mania, and mania impairs judgement.

Defendant, who studies the effects of drugs on the brain, testified an over dosage of Zoloft can cause hypo-mania in a few people. Defendant felt Plaintiff was probably suffering from hypo-mania in November of 1996, but he did not notice anything to indicate Plaintiff suffered from mental illness at the time of the execution of the Agreement. If Defendant had observed Plaintiff to be mentally impaired, he would have had her involuntarily committed.

Karen Dawkins, M.D. (Dr. Dawkins), an Assistant Professor of Psychiatry at UNC, testified she observed Plaintiff in connection with a presentation Plaintiff gave before thirty-to-forty mental health professionals at UNC in late October of 1996. Plaintiff's presentation was "well-received," and Dr. Dawkins felt Plaintiff did not exhibit any signs of being impaired by any mental condition at that time.

In its order and judgment in favor of Defendant, the trial court entered the following pertinent findings of fact and conclusions of law:

> 33. . . . Plaintiff was not out of touch with reality and was not psychotic during such period of time, nor was she at any time prior to the signing of [the Agreement] on September 10, 1996, and for some significant period of time thereafter. . . .

> 34. . . . Plaintiff's mental state during the spring and summer and early fall of 1996 was not a state of diminished or impaired mental capacity and was not in any way out of the ordinary for her. . . .

> 35. . . . Plaintiff did not lack the capacity to enter into [the Agreement] on September 10, 1996. She knew what she was doing and understood the consequences of signing the Agreement. She had adequate time and opportunity prior to the signing of the Agreement on September 10th to reconsider the terms she had initially agreed to on August 15th, and to which she again agreed on September 1st. She signed the [A]greement of her own free and voluntary will and accord, without any coercion or duress or manipulation, and she was legally competent to do so. She freely chose not to consult an attorney.

SIDDEN v. MAILMAN

[137 N.C. App. 669 (2000)]

36. . . . Defendant acted in good faith toward . . . Plaintiff and intended to divide their marital property and debts in a fair and equitable manner, and his efforts to do so were not intentionally one-sided or unfair. He took no steps to manipulate . . . Plaintiff and used no coercive tactics in dealing with her.

37. . . . [Plaintiff] did not plead mistake or breach of fiduciary duty in her Complaint nor did she offer any evidence of same . . . .

38. . . .

(a). . . Viewed as a percentage allocation, the Plaintiff received 38% of the total economic benefits distributed and the [Defendant] received 62% of such total economic benefits. . . .

. . . .

Based on the foregoing Findings of Fact, the Court CONCLUDES AS A MATTER OF LAW the following:

. . . .

4. The Agreement is . . . not unconscionable. The Agreement divided the marital property and debts unequally in the amount of $34,443.56 in Defendant's favor (the percentage allocation was 62%-38% in . . . Defendant's favor), but the amount of this inequality is not unconscionable in that it was not grossly disproportionate in favor of . . . Defendant. The Court has considered all of the facts and circumstances surrounding the Agreement in reaching its conclusion that the same was not unconscionable, and finds that any inequality of the bargain is not so manifest as to shock the judgment of a person of common sense, and finds that the terms are not so oppressive that no reasonable person would make them and no honest and fair person would accept them, and finds that the provisions are not so one-sided that . . . Plaintiff was denied any opportunity for a meaningful choice. Instead, the bargain was one that a reasonable person of sound judgment might well accept because of the factors justifying an unequal division as above described.

---

The issues are whether: (I) the evidence supports the trial court's finding that Plaintiff's "mental state . . . was not . . . impaired" at the time the Agreement was executed; (II) the evidence supports the trial court's findings that Plaintiff signed the Agreement "of her own free

and voluntary will . . . without . . . coercion"; (III) Plaintiff alleged and offered evidence of fraud as a basis to set aside the Agreement; and (IV) the Agreement is unconscionable.

Separation and/or property settlement agreements are contracts and as such are subject to recission on the grounds of (1) lack of mental capacity, (2) mistake, (3) fraud, (4) duress, or (5) undue influence. 17B C.J.S. *Contracts* §§ 460-464, at 77-83 (1999); *Knight v. Knight* 76 N.C. App. 395, 398, 333 S.E.2d 331, 333 (1985). Furthermore, these contracts are not enforceable if their terms are unconscionable. *Id.*; *King v. King*, 114 N.C. App. 454, 457, 442 S.E.2d 154, 157 (1994).

A claim for fraud may be based "on an affirmative misrepresentation of a material fact or a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose." *Harton v. Harton*, 81 N.C. App. 295, 297, 344 S.E.2d 117, 119 (citation omitted), *disc. review denied*, 317 N.C. 703, 347 S.E.2d 41 (1986). A duty to disclose arises where: (1) "a fiduciary relationship exists between the parties to the transaction"; (2) there is no fiduciary relationship and "a party has taken affirmative steps to conceal material facts from the other"; and (3) there is no fiduciary relationship and "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Id.* at 297-98, 344 S.E.2d at 119. A husband and wife, unless they have separated and become adversaries negotiating over the terms of a separation and/or property settlement agreement, are in a fiduciary relationship. *Id.* at 297, 344 S.E.2d at 119; *Link v. Link*, 278 N.C. 181, 192, 179 S.E.2d 697, 704 (1971).

A claim that an agreement is unconscionable "requires a determination that the agreement is both substantively and procedurally unconscionable." *King*, 114 N.C. App. at 458, 442 S.E.2d at 157. Procedural deficiencies involve "bargaining naughtiness," *id.*, "such as deception or a refusal to bargain over contract terms," 8 Samuel Williston, *A Treatise on the Law of Contracts* § 18:10, at 57 (Richard A. Lord ed., 4th ed. 1998). The failure of a husband and/or a wife to accurately disclose his or her assets and debts in negotiating a separation and/or a property agreement can constitute procedural unconscionability, even if the failure to disclose does not constitute fraud. *Daughtry v. Daughtry*, 128 N.C. App. 737, 740-41, 497 S.E.2d 105, 107 (1998). Substantive unconscionability involves the "inequality of the bargain." *King*, 114 N.C. App. at 458, 442 S.E.2d at 157.

CONTRACT CLAIMS

I

*Mental Capacity*

**[1]** Plaintiff first argues she was mentally incompetent at the time she signed the Agreement, and the trial court thus erred in refusing to rescind the Agreement on this basis. We disagree.

The trial court found as a fact that Plaintiff's "mental state . . . was not . . . impaired" at the time the Agreement was executed and there is competent evidence in the record to support this finding. This Court is accordingly bound by this finding of fact. *Bridges v. Bridges*, 85 N.C. App. 524, 526, 355 S.E.2d 230, 231 (1987).

The record to this Court reveals conflicting evidence regarding Plaintiff's mental state at the time she executed the Agreement: there is evidence Plaintiff did not have the capacity to enter into a contract because she was under a drug induced mania that impaired her judgment; there is also evidence Plaintiff had the capacity to contract; Hadler did not see anything about Plaintiff's behavior or appearance which would indicate she lacked the capacity to contract at the Agreement's execution; and Dr. Dawkins did not notice any signs that Plaintiff was mentally impaired shortly after the Agreement was executed. Furthermore, Plaintiff directed Defendant take her to a bank so she could receive the money due her under the Agreement, thus, demonstrating she understood the nature of the act she was engaged in and its consequences.

The trial court resolved this conflict of evidence in favor of Defendant, and thus, did not err in refusing to rescind the Agreement on the ground of Plaintiff's lack of capacity to contract.

II

*Undue Influence*

**[2]** Plaintiff argues the Agreement must be rescinded because Defendant exercised undue influence over her decision to sign the Agreement. We disagree.

The trial court found as a fact Plaintiff signed the Agreement "of her own free and voluntary will . . . without . . . coercion" and there is competent evidence in the record to support this finding. This Court is accordingly bound by this finding of fact. *Bridges*, 85 N.C. App. at 526, 355 S.E.2d at 231.

The parties executed an informal agreement two weeks after their separation and the formal Agreement was executed two weeks later. At the time of the formal execution, Plaintiff was told by Defendant's attorney she could have an attorney review the Agreement before she signed it and she was given time to review the Agreement, in private, in Hadler's office. Plaintiff chose to sign the Agreement without the advice of an attorney, even though she had a business attorney and an accountant who regularly represented her in her psychotherapy practice. The trial court, thus, did not err in refusing to rescind the Agreement on the ground of undue influence.

## III

### *Fraud*

The trial court found Plaintiff "did not plead . . . breach of fiduciary duty in her Complaint nor did she offer any evidence of same."

### *Pleading*

**[3]** Plaintiff contends her pleadings are sufficient to allege the Agreement was procured by fraud, in that she alleged she and Defendant were married at the time the Agreement was executed and there was evidence presented, without objection, that Defendant failed to disclose the existence of his State Retirement Account. We agree.

As a general proposition, fraud must be alleged in the complaint with particularity. N.C.G.S. § 1A-1, Rule 9(b) (1999). Constructive fraud, however, requires "less particularity," *Terry v. Terry,* 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981), and can be based on a breach of a "confidential relationship rather than a specific misrepresentation," *id.* at 85, 273 S.E.2d at 678-79. A claim based on constructive fraud is sufficient if it alleges "facts and circumstances '(1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust.' " *Id.* at 85, 273 S.E.2d at 679 (quoting *Rhodes v. Jones,* 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950)). The pleading must contain an allegation of the particular representation made, *Rhodes,* 232 N.C. at 549, 61 S.E.2d at 726-27, and there is no requirement there be allegations of dishonesty or intent to deceive, as fraud is presumed from the nature of the relationship, 37 Am. Jur. 2d *Fraud and Deceit* § 4 (1968); *Watts v.*

*Cumberland County Hosp. System, Inc.*, 317 N.C. 110, 116, 343 S.E.2d 879, 884 (1986).

In this case, Plaintiff alleges she executed the Agreement at a time when she and Defendant were husband and wife, thus sufficiently alleging the existence of a fiduciary duty.[1] *See Link*, 278 N.C. at 192-93, 179 S.E.2d at 704 (relationship between a husband and a wife creates a relationship of trust and confidence and can give rise to a fiduciary duty). There are, however, no allegations of "facts and circumstances" where Defendant is "alleged to have taken advantage of his position of trust."[2] At trial, however, Defendant admitted he did not disclose to Plaintiff the existence of his State Retirement Account, and the admission of this evidence is tantamount to an amendment to the complaint that Defendant failed to disclose a material asset. N.C.G.S. § 1A-1, Rule 15(b) (1999). With this amendment, the complaint sufficiently alleges Defendant breached his fiduciary duty to Plaintiff when he failed to disclose the existence of his State Retirement Account. The trial court, thus, erred in ruling Plaintiff "did not plead . . . breach of fiduciary duty in her Complaint."[3]

## Evidence

[4] Plaintiff offered evidence that she and her husband, the Defendant, soon after separating and before their divorce, informally agreed to the distribution of their marital assets and debts. This informal agreement was reduced to writing by Defendant's attorney and was signed by both parties. At some point after the execution of the Agreement, Plaintiff learned Defendant had failed to disclose the existence of his State Retirement Account, having a value of $158,100.00.

---

1. The Complaint does allege Defendant secured legal advice and Defendant's attorney prepared the Agreement. These allegations, however, read in the light most favorable to Plaintiff, do not necessarily reveal the parties were negotiating as adversaries. Representation by an attorney does not automatically end the confidential relationship of the spouses if the attorney's role was merely to record the agreement the spouses agreed to while living in the confidential relationship. *Harroff v. Harroff*, 100 N.C. App. 686, 691, 398 S.E.2d 340, 343 (1990), *disc. review denied*, 328 N.C. 330, 402 S.E.2d 833 (1991).

2. Plaintiff does allege "Defendant . . . manipulated [her] and took advantage of [her] then irrational desire to please [him]." The allegation, however, is in the context of her claim she was "incompetent" because she was "emotionally, physically and psychologically debilitated." We, thus, do not read these allegations as any attempt to assert a breach of a fiduciary duty.

3. The complaint does not contain any alternative pleading asserting fraud on some basis other than breach of fiduciary duty, and thus, the only fraud issue before the trial court related to the breach of fiduciary duty.

This evidence is some evidence Defendant failed to disclose a material fact to Plaintiff at a time when the parties were in a fiduciary relationship. The trial court, thus, erred in finding Plaintiff had not presented "any evidence" of a breach of a fiduciary relationship.

Because the trial court found Plaintiff had not alleged breach of fiduciary duty and had not offered any evidence on this issue, that court made no findings or conclusions on this issue. This was error and remand must be had to the trial court. On remand, the trial court must enter findings and conclusions, based on the evidence in this record, on the breach of fiduciary duty issue.

## UNCONSCIONABILITY

### IV

[5] Plaintiff argues the Agreement is unconscionable. We disagree.

In this case, Defendant testified he inadvertently failed to disclose the value of his State Retirement Account. Assuming without deciding this omission amounted to procedural unfairness, an issue we need not address, the Agreement is not substantively unfair and therefore not unconscionable.

The trial court found the Agreement divided the martial property and debts, with a 62% allocation to Defendant and a 38% allocation to Plaintiff. The trial court then concluded the Agreement was not unconscionable because this allocation "was one that a reasonable person of sound judgment might well accept because of [certain] factors justifying an unequal division" of the marital property. Although Plaintiff assigns error to this finding and conclusion, she failed to argue them in her brief to this Court and, therefore, has abandoned them. N.C.R. App. P. 28(b)(5). Accordingly, we do not address the substantive unfairness of the Agreement and sustain the conclusion of the trial court that the Agreement is substantively fair. As Plaintiff must show both procedural and substantive unfairness to support her unconscionable claim, the trial court correctly rejected this claim. *King*, 114 N.C. App. at 458, 442 S.E.2d at 157.

Plaintiff made other numerous assignments of error which were not argued in her brief to this Court, and thus, are likewise deemed abandoned. N.C.R. App. P. 28(b)(5).

Affirmed in part and remanded.

Judges LEWIS and EDMUNDS concur.