Lee v. McDowell, 2020 NCBC 74.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

KEITH LEE and YOUNG KWON
(individually and derivatively on behalf
of rFactr, Inc.),

        Plaintiffs,

      v.

CHRIS MCDOWELL; CHRIS LAU; and
ROBERT DUNN,

        Defendants,

   and

RFACTR, INC.,

        Nominal Defendant.

CHRIS MCDOWELL,

        Third-Party Plaintiff,

      v.

RICHARD BRASSER and GREG
GENTNER,

        Third-Party
        Defendants.

CHRIS LAU and ROBERT DUNN,

        Third-Party Plaintiffs,

      v.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 17741

**ORDER AND OPINION ON
DEFENDANT CHRIS MCDOWELL'S
MOTION TO DISMISS PLAINTIFFS'
VERIFIED AMENDED COMPLAINT**

RICHARD BRASSER and GREG GENTNER,

        Third-Party
        Defendants.

1.    **THIS MATTER** is before the Court on Defendant Chris McDowell's ("McDowell") Motion to Dismiss Plaintiffs' Verified Amended Complaint (the "Motion") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"). (ECF No. 15.)

2.    This case arises from Plaintiffs Keith Lee's and Young Kwon's (collectively, "Plaintiffs") investments in, and McDowell's alleged mismanagement of, Nominal Defendant rFactr, Inc. ("rFactr" or the "Company"). The Company is now insolvent but was formerly engaged in business sales technology. (Verified Am. Compl. ¶¶ 1, 9, 19 [hereinafter "Am. Compl."], ECF No. 10.) Plaintiffs allege that McDowell failed to disclose to Plaintiffs rFactr's poor financial condition and correct management's misrepresentations to Plaintiffs about rFactr's business while at the same time actively and successfully soliciting their investments in the Company. (Am. Compl. ¶9.)

3.    Having considered the Motion, the Verified Amended Complaint ("Amended Complaint"), the related briefing, and the arguments of counsel at the hearing on the Motion, the Court, for the reasons set forth below, **DENIES** the Motion.

*Moore & Van Allen PLLC, by Christopher D. Tomlinson and William M. Butler, for Plaintiffs Keith Lee and Young Kwon.*

*James, McElroy & Diehl, P.A., by John R. Buric, for Nominal Defendant rFactr, Inc.*

*Rosenwood, Rose & Litwak, PLLC, by Erik M. Rosenwood and Carl J. Burchette, for Defendant/Third-Party Plaintiff Chris McDowell.*

*Troutman Pepper Hamilton Sanders LLP, by Kiran H. Mehta, William J. Farley, and Mackenzie Willow-Johnson, for Defendants/Third-Party Plaintiffs Chris Lau and Robert Dunn.*

*Lincoln Derr PLLC, by Sara R. Lincoln and Phoebe Norton Coddington, for Third-Party Defendants Richard Brasser and Greg Gentner.*

Bledsoe, Chief Judge.

I.

FACTUAL BACKGROUND

4. The Court does not make findings of fact on a motion to dismiss under Rule 12(b)(6). Rather, the Court recites the allegations asserted and documents referenced in Plaintiffs' Amended Complaint that are relevant to the Court's determination of the Motion. *See, e.g.*, *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986) (noting a motion to dismiss "generally tests the legal sufficiency of the complaint").

5. Defendants McDowell, Chris Lau ("Lau"), and Robert Dunn ("Dunn") are current or former directors of rFactr. (Am. Compl. ¶ 1.) McDowell served as a director from 2015–18, Dunn from 2015–17, and Lau since May 2017. (Am. Compl. ¶¶ 12, 14–15.) At all relevant times, Third-Party Defendant Richard Brasser ("Brasser") was the Chief Executive Officer and President of rFactr, and Third-Party Defendant Greg Gentner ("Gentner") was the Company's Chief Operating Officer. (Am. Compl. ¶ 3.) In addition to serving as a member of rFactr's board of directors,

McDowell was at all relevant times a shareholder of the Company, (Am. Compl. ¶ 12), as well as "[Plaintiffs'] personal broker[,]" (Am. Compl. ¶ 13).

6. Plaintiffs allege that they were first introduced to rFactr and Brasser by McDowell at a dinner party McDowell hosted in New York City in early 2014. (Am. Compl. ¶ 20.) Plaintiffs allege that "McDowell never disclosed to [Plaintiffs] that he was a consultant for rFactr and was being compensated by rFactr." (Am. Compl. ¶ 27.)

7. During the dinner, both Brasser and McDowell "solicited [Plaintiffs] to purchase convertible promissory notes from rFactr." (Am. Compl. ¶ 21.) Brasser "stated that, due to their relationship with McDowell, [Plaintiffs] would be treated 'like 'friends and family.'" (Am. Compl. ¶ 22.) Brasser also told Plaintiffs that rFactr was a "new company[,]" would be "cash flow positive 'in the next six months,'" and was raising money "specifically for new subscription demand created by pending large customers." (Am. Compl. ¶ 23.)

8. Plaintiffs allege that Brasser's statements were false and that "McDowell had knowledge of Brasser's misrepresentations and omissions and aided in the sale of convertible notes to [Plaintiffs], including by personally soliciting and recommending their investments in rFactr, arranging and attending their meeting with Brasser, and by communicating with the [Plaintiffs] regarding their potential investments in rFactr[.]" (Am. Compl. ¶ 28.) According to Plaintiffs, McDowell not only "recommended investments in rFactr[,]" but also "vouched for Brasser." (Am. Compl. ¶ 26.)

9.    Plaintiffs allege that rFactr was merely a rebranded version of its predecessor, Targeted Golf Solutions, Inc. ("Targeted Golf"), not a new company as Brasser had represented.  (Am. Compl. ¶¶ 46, 51.)  As a continuation of Targeted Golf, rFactr remained subject to Targeted Golf's substantial liabilities, (Am. Compl. ¶¶ 47–53), which McDowell knew about but "did not disclose . . . to [Plaintiffs,]" (Am. Compl. ¶ 52).

10.    Plaintiffs assert that, as a result of McDowell's acts and omissions, they each "purchased convertible promissory notes from rFactr[,]" (Am. Compl. ¶ 29), which they "would not have purchased . . . but for the recommendation and inducement of McDowell[,]" (Am. Compl. ¶ 93).  Kwon purchased one note in the principal amount of $300,000 in March 2014, (Am. Compl. ¶ 31), and Lee purchased notes in the aggregate principal amount of $300,000 in April 2014 and March 2015, (Am. Compl. ¶ 30).

11.    The Company's financial fortunes worsened after Plaintiffs made their investments.  According to Plaintiff, whether as Targeted Golf or as rFactr, the Company failed to pay its outstanding state and federal taxes.  (Am. Compl. ¶ 81.)  By mid-2016, rFactr "ceased paying service providers," (Am. Compl. ¶ 82), and by August 2018, rFactr could not pay its employees, had laid off all full-time employees, was "unable to pay its outstanding debts . . . [or] support ongoing operations[,]" "bec[a]me a shell company with no ability to do business and [with] huge debts it [could] not pay[,]" (Am. Compl. ¶ 84), and had "ceased operations and [was] winding-up[,]" (Am. Compl. ¶ 83).

12. Plaintiffs allege, among other things, that McDowell, as a Company director, "fail[ed] to provide oversight of rFactr's finances and permit[ed] Brasser and Gentner to conceal the state of rFactr's finances[,]" (Am. Compl. ¶ 60(a)), "approv[ed] or permit[ed] rFactr's officers to misuse and squander corporate funds," (Am. Compl. ¶ 60(d)), and "fail[ed] to disclose or correct known misrepresentations made to rFactr's creditors and shareholders[,]" (Am. Compl. ¶ 60(f)). Thus, according to Plaintiffs, McDowell "prevented noteholders and shareholders from learning the true state of rFactr and taking action and facilitated the decline of rFactr and the squandering of all of rFactr's assets." (Am. Compl. ¶ 72.)

13. The convertible promissory notes Plaintiffs purchased became due in 2017. Plaintiffs "notified rFactr and its [d]irectors in writing that their [n]otes had matured and payment was due." (Am. Compl. ¶ 78). Although "rFactr promised to pay the respective [n]oteholder the principal amount plus accrued interest" when due, (Am. Compl. ¶ 33), "rFactr has failed to pay [Plaintiffs] any amounts due under the [n]otes," (Am. Compl. ¶ 34), or "offer a plan for repayment[,]" (Am. Compl. ¶ 79).

II.

PROCEDURAL BACKGROUND

14. Plaintiffs filed the Complaint initiating this action on September 6, 2019, (Compl., ECF No. 3), and later filed the Amended Complaint on November 26, 2019, (ECF No. 10). Plaintiffs assert the following claims in their Amended Complaint: (i) a derivative claim against all Defendants for breach of their fiduciary duties as directors of rFactr, (Am. Compl.¶¶ 116–20); (ii) a separate breach of fiduciary duty

claim against McDowell for his failure to disclose information regarding his role in rFactr and rFactr's financial troubles (Am. Compl. ¶¶ 90–100); (iii) a claim for constructive fraud against McDowell, (Am. Compl. ¶¶ 101–06); and (iv) claims for securities fraud against McDowell under section 78A-56 of the North Carolina Securities Act, section 10(b) of the United States Exchange Act, and Rule 10b-5 promulgated thereunder by the Securities Exchange Commission, (Am. Compl. ¶¶107–15).

15. This case was designated a mandatory complex business court case on October 14, 2019, (ECF No. 1), and assigned to the undersigned on the same day, (ECF No. 2).

16. McDowell filed the Motion on December 23, 2019. (ECF No. 15.) The Motion has been fully briefed, and a hearing on the Motion was held on June 16, 2020 by videoconference, at which all parties were represented by counsel. The Motion is now ripe for resolution.

III.

LEGAL STANDARD

17. When deciding whether to dismiss for failure to state a claim under Rule 12(b)(6), the Court considers "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736 (2018) (quoting *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 51, 790 S.E.2d 657, 659 (2016)).

18. "[D]ismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Id.*, 821 S.E.2d at 736–37 (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)).

19. Although the Court construes the complaint "in the light most favorable to the non-moving party[,]" *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5, 802 S.E.2d 888, 891 (2017) (quoting *Kirby v. N.C. DOT*, 368 N.C. 847, 852, 786 S.E.2d 919, 923 (2016)), the Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences[,]" *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citation omitted); *see also McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013) ("While we treat plaintiffs' factual allegations as true, we may ignore plaintiffs' legal conclusions.").

IV.

ANALYSIS

20. Plaintiffs' individual claims are premised on McDowell's omissions, rather than his affirmative representations, and are based specifically on McDowell's failure to correct Brasser's misrepresentations to Plaintiffs regarding rFactr's financial condition and future prospects leading up to Plaintiffs' investments. (Am. Compl. ¶ 9.) McDowell contends that Plaintiffs' individual claims against him must be dismissed because (i) Plaintiffs have not pleaded facts showing proximate cause for

any claim;[1] (ii) Plaintiffs did not plead their constructive fraud and securities fraud claims with sufficient particularity; (iii) Brasser's statements regarding rFactr's financial future cannot serve as the basis for Plaintiffs' fraud-based claims;[2] and (iv) Plaintiffs have not pleaded facts showing either McDowell's intent to benefit himself or that McDowell "knowingly kept material information from Plaintiffs prior to their purchases of the [n]otes" because they did not allege that "McDowell was aware or had reason to believe any statements made by Brasser or Gentner about the Company or its economic prospects were false." (Br. Supp. Mot. Dismiss 5–9.) [3]

21. The Court addresses each argument in turn.

A. <u>Proximate Cause–All Claims</u>

22. McDowell first contends that Plaintiffs have not sufficiently alleged proximate cause to support any of their claims against him because "Plaintiffs cannot demonstrate that they reasonably relied on McDowell's actions or inactions when making the decision to purchase the [n]otes[.]" (Br. Supp. Mot. Dismiss 7.) Specifically, McDowell argues that "Plaintiffs had, at all times, direct access to Brasser and Gentner and the financial records of rFactr, and therefore any failure by

---

[1] This is the sole ground McDowell advances for dismissal of Plaintiffs' derivative claim for breach of fiduciary duty. (Def. Chris McDowell's Br. Supp. Mot. Dismiss Pls.' Verified Am. Compl. 7–9 [hereinafter "Br. Supp. Mot. Dismiss"], ECF No. 16.)

[2] Plaintiffs' securities fraud claims are the only fraud-based claims Plaintiffs assert against McDowell in the Amended Complaint. (Am. Compl. ¶¶ 107–15.)

[3] The Motion also sought to dismiss Plaintiffs' Amended Complaint under Rule 12(b)(7) for failure to join Brasser and Gentner as necessary parties. (Br. Supp. Mot. Dismiss 1–2.) McDowell confirmed at the hearing, however, that the addition of Brasser and Gentner to this action as Third-Party Defendants moots this aspect of his Motion. The Court, therefore, does not consider this aspect of McDowell's Motion and hereby denies it as moot.

McDowell to report information about the Company could not be the cause of any of the Plaintiffs' alleged damages." (Br. Supp. Mot. Dismiss 7–8.)

23. "Proximate cause is defined as 'a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred.' *In re Se. Eye Ctr.-Pending Matters*, 2019 NCBC LEXIS 29, at *178 (N.C. Super. Ct. May 7, 2019) (quoting *Adams v. Mills*, 312 N.C. 181, 192, 322 S.E.2d 164, 172 (1984)). Proximate cause exists only where "the risk of injury . . . is within the reasonable foresight of the defendant." *Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 403, 250 S.E.2d 255, 258 (1979).

24. "Questions concerning proximate cause are ordinarily best left to the jury." *In re Se. Eye Ctr.*, 2019 NCBC LEXIS 29, at *178 (quoting *Williams*, 296 N.C. at 403, 250 S.E.2d at 258 (noting that only in "exceptional cases" should the issue of proximate cause be resolved as a matter of law)). With these principles in mind, the Court reviews each claim to determine whether Plaintiffs have sufficiently alleged proximate cause.

### 1. Breach of Fiduciary Duty and Constructive Fraud[4]

25. McDowell argues that Plaintiffs' breach of fiduciary duty and constructive fraud claims fail for failure to allege proximate cause because "Plaintiffs

---

[4] McDowell has not challenged Plaintiffs' allegation that he owed Plaintiffs a fiduciary duty at the time Plaintiffs allege he solicited their investments. Therefore, the Court will assume without deciding for purposes of the Motion that Plaintiffs have alleged facts sufficient to show that a fiduciary relationship existed between McDowell and Plaintiffs. *See, e.g.*, *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (describing a fiduciary relationship

had . . . direct access to Brasser and Gentner and the financial records of rFactr[,]" (Br. Supp. Mot. Dismiss 7–8). Despite McDowell's assertion, however, these purported facts are not in the Amended Complaint, and it is the allegations of the Amended Complaint that the Court must test under Rule 12(b)(6). *See Corwin*, 371 N.C. at 615, 821 S.E.2d at 736.

26. Further, Plaintiffs have alleged facts showing an unbroken chain of events causing them injury which would not have occurred but for McDowell's alleged breaches of fiduciary duty. *See In re Se. Eye Ctr.*, 2019 NCBC LEXIS 29, at *178. In particular, Plaintiffs allege that McDowell, as their personal investment broker, vouched for Brasser, personally arranged for Plaintiffs' meeting with Brasser, knew that Brasser made false representations to Plaintiffs at the New York City meeting but failed to correct them, and solicited Plaintiffs' purchase of rFactr notes, all of which induced Plaintiffs to invest their funds in rFactr's notes and thereby suffer injury. (Am. Compl ¶¶ 20–34.) Plaintiffs further allege that they "would not have purchased the [n]otes but for the recommendation and inducement of McDowell." (Am. Compl ¶ 93.) As such, the Court concludes that, when viewed in the light most favorable to Plaintiffs, these allegations are sufficient to demonstrate that McDowell's alleged breach of fiduciary duty proximately caused Plaintiffs' injury. *See Adams*, 312 N.C. at 193, 322 S.E.2d at 172 (stating that "[p]roximate cause is an

as one of "special confidence" (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931))); *Searcy v. Searcy*, 215 N.C. App. 568, 573, 715 S.E.2d 853, 857 (2011) (stating that a claim of constructive fraud requires a "relation of trust and confidence" (quoting *Sidden v. Mailman*, 137 N.C. App. 669, 677, 529 S.E.2d 266, 272 (2000))).

inference of fact to be drawn from other facts and circumstances"). McDowell's Motion seeking dismissal on this basis must therefore be denied.

### 2. Securities Fraud

27. One primary difference between claims for breach of fiduciary duty, constructive fraud, and securities fraud is that securities fraud, whether under North Carolina or federal law, does not require that a plaintiff's injuries result from reliance on a relationship of trust and confidence with the defendant. Rather, as applied here, Plaintiffs must allege that McDowell's omissions caused Plaintiffs to invest in rFactr and resulted in Plaintiffs' loss. *See Bruschi v. Brown*, 876 F.2d 1526, 1530 (11th Cir. 1989) (stating that causation under federal securities law requires pleading "that the defendant's misrepresentations caused the plaintiff to make the investment" and "that the untruth was in some reasonably direct . . . way responsible for his loss" (citations omitted)); *Saw Plastic, LLC v. Sturrus*, 2017 NCBC LEXIS 76, *26 (N.C. Super. Ct. Aug. 25, 2017) ("An action under [G.S. § 78A-56(a)] sounds in fraud, comparable to common law fraud and must include allegations and proof typical of common law fraud claims." (citation and internal quotation marks omitted)); *see also Claggett v. Wake Forest Univ.*,126 N.C. App. 602, 610, 486 S.E.2d 443, 447 (1997) (noting a plaintiff alleging common law fraud must aver that "plaintiff suffered damage resulting from defendant's misrepresentation or concealment").

28. The allegations Plaintiffs advance to support their various claims for securities fraud, including to establish proximate cause, involve the same allegations they advance to support their breach of fiduciary duty and constructive fraud claims.

(*See* Am. Compl. ¶¶ 21, 23, 28, 30–31, 34 (alleging McDowell's solicitation of and failure to inform Plaintiffs); *compare* 91, 93, *with* ¶ 113 (alleging reliance on McDowell's acts and omissions when deciding to invest).) All of these claims are premised on Plaintiffs' allegations that McDowell successfully solicited their investments while concealing from them material information about the Company's finances that he had a duty to disclose—investments Plaintiffs would not have made had McDowell disclosed the truth he knew about the Company. (Am. Compl. ¶¶ 110, 112–13.) These allegations are sufficient to show that McDowell's fraudulent conduct proximately caused Plaintiffs' investment losses for purposes of Plaintiffs' securities fraud claims. *See Williams*, 296 N.C. at 403, 250 S.E.2d at 258. McDowell's Motion to Dismiss on this ground must therefore be denied.

### 3. Derivative Claim for Breach of Fiduciary Duty

29. McDowell also seeks to dismiss Plaintiffs' derivative claim based on his alleged breach of fiduciary duty for Plaintiffs' failure to allege proximate cause. (Br. Supp. Mot. Dismiss 7–9.) Like his other challenges to Plaintiffs' pleading on this ground, McDowell's argument is without merit.

30. Plaintiffs allege that McDowell, as a director, "fail[ed] to provide oversight of rFactr's finances and permit[ed] Brasser and Gentner to conceal the state of rFactr's finances[,]" (Am. Compl. ¶ 60(a)), "approv[ed] or permit[ed] rFactr's officers to misuse and squander corporate funds," (Am. Compl. ¶ 60(d)), and "fail[ed] to disclose or correct known misrepresentations made to rFactr's creditors and shareholders[,]" (Am. Compl. ¶ 60(f)). Plaintiffs further allege that McDowell

provided services to rFactr, constituting a conflict of interest[,] (Am. Compl. ¶ 73), cancelled a deal with another company "based on [his] own self interest," (Am. Compl. ¶ 75), and refused to effect "changes regarding the governance of rFactr" after admitting that Brasser and Gentner's salaries were "truly outrageous" and that they were "destroying th[e] company[,]" (Am. Compl. ¶¶ 66–67, 69).

31. Plaintiffs also allege that McDowell's various failures "prevented noteholders and shareholders from learning of the true state of rFactr and taking action and facilitated the decline of rFactr and the squandering of all of rFactr's assets." (Am. Compl. ¶ 72.) According to Plaintiffs, as a "result of [McDowell's] breaches of fiduciary duty, rFactr has suffered and will continue to suffer" injury because the Company "[does] not have capital to pay its employees," cannot "service ongoing contracts with clients" or "support the ongoing operations of the [C]ompany[,]" and cannot pay "its outstanding debts[.]" (Am. Compl. ¶¶ 84, 119.)

32. The Court concludes that these allegations, taken as true and viewed in the light most favorable to Plaintiffs, are sufficient to show that McDowell breached his fiduciary duties as a director by failing to take any action to prevent rFactr's officers from mismanaging the Company and thereby causing rFactr to "become a shell company with no ability to do business[,]" (Am. Compl. ¶ 84), and resulting in loss to the Company, its shareholders, and its creditors. McDowell's Motion to Dismiss Plaintiffs' derivative claim based on a failure to allege proximate cause must therefore be denied.

B.  Constructive Fraud Claim—Pleading with Particularity

33.  McDowell seeks dismissal of Plaintiffs' constructive fraud claim on the additional ground that Plaintiffs have failed to plead that claim with sufficient particularity under Rule 9(b).[5]  (Br. Supp. Mot. Dismiss 4.)  Our appellate courts, however, have made clear that "[a] claim of constructive fraud does not require the same rigorous adherence to elements as actual fraud."  *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d, 674, 677 (1981).  Consequently, a claim for constructive fraud "does not need to meet the Rule 9(b) pleading requirement."  *Ironman Med. Props., LLC v. Chodri*, 836 S.E.2d 682, 691 (N.C. Ct. App. 2019).  Accordingly, based on the Court's review of the relevant allegations in the Amended Complaint, McDowell's Motion to Dismiss Plaintiffs' constructive fraud claim on this ground must be denied.

C.  Constructive Fraud Claim—McDowell's Intent to Benefit Himself

34.  McDowell next claims that Plaintiffs' constructive fraud claim is fatally deficient because "the Amended Complaint fails to demonstrate that McDowell sought to benefit himself in a way that took advantage of . . . Plaintiffs"—specifically that Plaintiffs have not alleged facts showing that "McDowell was aware of or had reason to believe that any statements made by Brasser and Gentner . . . were false." (Br. Supp. Mot. Dismiss 5.)  McDowell's argument is meritless.

35.  While McDowell is correct that a constructive fraud plaintiff must plead that the defendant intended to use his position of trust and confidence in order to benefit

---

[5] Rule 9(b) specifically provides that "[i]n all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  N.C. R. Civ. P. 9(b).

himself, *see Piles v. Allstate Ins. Co.*, 187 N.C. App. 399, 406, 653 S.E.2d 181, 186 (2007) ("[A]n essential element of constructive fraud is that [D]efendant[ ] sought to benefit [himself] in the transaction." (citation and internal quotation marks omitted)), *disc. review denied*, 362 N.C. 361, 663 S.E.2d 316 (2008), Plaintiffs have satisfied their pleading burden here.

36.     Contrary to McDowell's contention, (Br. Supp. Mot. Dismiss 5), Plaintiffs have alleged that "McDowell took advantage of the fiduciary relationship with the [n]oteholders to the detriment of the [n]oteholders and to the benefit of himself." (Am. Compl. ¶ 103.) Plaintiffs have further alleged that, based on the knowledge McDowell gained as a shareholder and director of rFactr and his knowledge of its predecessor, he knew that Brasser made misrepresentations to Plaintiffs, (Am. Compl. ¶ 25), yet not only failed to disclose that information to Plaintiffs when he had a duty to do so, but also induced Plaintiffs to invest in rFactr, the failing company in which he was a shareholder, thereby advancing McDowell's pecuniary interest at Plaintiffs' expense. (Am. Compl. ¶ 28.)   The Court concludes that these allegations are sufficient to survive dismissal under Rule 12(b)(6).   McDowell's Motion on this basis must therefore be denied.

D.     Securities Fraud Claims—Pleading with Particularity/Future Statements

37.     McDowell also seeks to dismiss Plaintiffs' securities fraud claims for failing to plead with requisite particularity under Rule 9(b).   (Br. Supp. Mot. Dismiss 4.) Separately, he contends that these same claims should be dismissed as impermissibly

based on unfulfilled promises concerning future events. (Br. Supp. Mot. Dismiss 5.) Neither contention has merit.

38. Plaintiffs' securities fraud claims are omission-based and are premised on Plaintiffs' allegations that (i) McDowell "was involved in and materially aided rFactr's sale of the [n]otes[,]" (Am. Compl. ¶ 110), and (ii) "in soliciting [Plaintiffs] to purchase the [n]otes, McDowell concealed information regarding rFactr from [Plaintiffs], failed to disclose known misrepresentations and conflicts of interest to [Plaintiffs], and personally benefitted from rFactr at the expense of [Plaintiffs,]" (Am. Compl. ¶ 112). Plaintiffs further allege that they "had no knowledge of the concealed facts" and "reasonably relied upon the false or incomplete representations in deciding to purchase the [n]otes." (Am. Compl. ¶ 113.)

39. As to the specific information Plaintiffs allege that McDowell concealed, Plaintiffs allege, as noted above, that Brasser told them at a dinner party in New York City in early 2014 that rFactr was a "new company[,]" would be "cash flow positive 'in the next six months,' " and was "raising money specifically for new subscription demand created by pending large customers." (Am. Compl. ¶¶ 23, 26, 28.) Plaintiffs further allege that McDowell (i) was their broker/investment advisor; (ii) invited them to the dinner party to meet Brasser and Gentner; (iii) vouched for Brasser; (iv) heard Brasser's representations at the dinner party; (v) knew those representations were false; (vi) had a duty as Plaintiffs' broker/investment advisor to advise Plaintiffs that Brasser's statements were not true; and still (vii) solicited their

investments in rFactr notes without disclosing that Brasser's statements about rFactr's business and prospects were inaccurate. (Am. Compl. ¶¶ 20, 28–31.)

40. Turning first to Rule 9(b)'s particularity requirement, the Supreme Court of North Carolina has long held that Rule 9(b) is "met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Terry*, 302 N.C. at 85, 273 S.E.2d at 678. However, " 'fraud by omission is, by its very nature, difficult to plead with particularity' under Rule 9(b)." *Island Beyond, LLC v. Prime Cap. Grp., LLC*, 2013 NCBC LEXIS 48, at *18 (N.C. Super. Ct. Oct. 30, 2013) (quoting *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at *9 (N.C. Super. Ct. June 18, 2007)). This Court has therefore held that fraud claims based on omission require a plaintiff to allege:

> (1) "the relationship [between plaintiff and defendant] giving rise to the duty to speak[";] (2) the event that triggered the duty to speak or the general time period over which the relationship arose and the fraud occurred; (3) "the general content of the information that was withheld and the reason for its materiality[";] (4) the identity of those under a duty who failed to make such disclosures; (5) what the defendant gained from withholding the information; (6) why the plaintiff's reliance on the omission was reasonable and detrimental; and (7) the damages the fraud caused the plaintiff.

*Id.*, at *18–19 (quoting *Lawrence*, 2007 NCBC LEXIS 20, at *9); *see also Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195–96 (M.D.N.C. 1997) (stating the same). Plaintiffs' allegations meet this pleading burden here, including that McDowell had a duty to speak on the pleaded facts. *See, e.g.*, *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) (requiring disclosure under securities fraud claims "only when

necessary to make . . . statements made, in the light of the circumstances under which they were made, not misleading" (citation and internal quotation marks omitted)).

41.     McDowell's argument concerning the promissory nature of Brasser's alleged misrepresentations likewise misses the mark.  McDowell premises his argument on settled North Carolina law that "mere unfulfilled promises cannot be made the basis for an action of fraud." *Williams v. Williams*, 220 N.C. 806, 810, 18 S.E.2d 364, 365 (1942).[6]  But this case law, which addresses claims against a promisor (here Brasser), *see id.* at 811, 18 S.E.2d at 367 (noting that for claims based on an unfulfilled promise, the relevant question is "the state of the promisor's mind"), has little application to claims against McDowell, which are based on his failure to speak, not on his making an unfulfilled promise, *see, e.g.*, *Lawrence*, 2007 NCBC LEXIS 20, at *8 (when a claim for fraud arises by "nondisclosure, Plaintiffs . . . must allege that . . . the Defendants had a duty to disclose material information to them, as silence is fraudulent only when there is a duty to speak") (citing *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198, 225 S.E.2d 557, 565 (1976)); *see also, e.g.*, *Skoog*, 2013 NCBC LEXIS 16, at *15 ("An omission must be tied to an affirmative statement, because there is no general duty of disclosure imposed by either federal or North Carolina securities laws." (citing *Chiarella v. United States*, 445 U.S. 222, 230 (1980))); *Matrixx*

---

[6] The Court notes, however, that North Carolina and federal law are clear that an unfulfilled promise may be actionable in fraud where "the promisor had no intention of carrying it out at the time of the promise." *Skoog v. Harbert Priv. Equity Fund, II, LLC*, 2013 NCBC LEXIS 16, at *30 (N.C. Super. Ct. Mar. 25, 2013) (quoting *McKinnon v. CV Indus., Inc.*, 213 N.C. App. 328, 338, 713 S.E.2d 495, 503 (2011)) (explaining that the rule also applies to securities fraud claims brought under the federal statute).

*Initiatives, Inc.*, 563 U.S. at 44 ("Disclosure is required under these provisions only when necessary to make . . . statements made, in the light of the circumstances under which they were made, not misleading." (citation and internal quotation marks omitted)).

42. Accordingly, because Plaintiffs have alleged sufficient facts to support their omission-based fraud claims against McDowell, McDowell's Motion should be denied.

E. <u>Securities Fraud Claims—Knowing Concealment of Material Information</u>

43. Finally, McDowell contends that Plaintiffs' securities fraud claims should be dismissed for "fail[ure] to demonstrate that McDowell . . . knowingly kept material information from Plaintiffs prior to their purchases of the [n]otes[.]" (Br. Supp. Mot. Dismiss 5.) In support, McDowell relies upon *Sullivan v. Mebane Packaging Group, Inc.*, 158 N.C. App. 19, 34, 581 S.E.2d 452, 463 (2003), to argue that a plaintiff must demonstrate that "(1) the defendant made an untrue statement of material fact or omitted a material fact that would have been necessary to make the statements that were made not misleading[,]" and "(2) the defendant cannot show that he did not know or, with reasonable care, could not have known, of the untruth or omission." (Br. Supp. Mot. Dismiss 4.)

44. The Court again finds McDowell's argument without merit. Even if the Court were to assume *Sullivan* controls,[7] Plaintiffs have alleged facts showing that

---

[7] *Sullivan* involved N.C.G.S. § 78A-56(b), which prohibits the *purchase* of a security by means of an untrue statement or omission—not the sale or offer of sale of a security by those same means, which is the conduct Plaintiffs seek redress for here and is prohibited through N.C.G.S. § 78A-56(a)(2):

McDowell knew that: (i) Brasser's representations were false, (ii) Plaintiffs did not know that Brasser's representations were false, (iii) Plaintiffs intended to rely on Brasser's misrepresentations in deciding to invest in rFactr's notes, and (iv) despite this knowledge, did not advise Plaintiffs that Brasser's representations were false. (Am. Compl. ¶¶ 25–26, 28.) As such, Plaintiffs have satisfied any pleading burden to "demonstrate that McDowell . . . knowingly kept material information from Plaintiffs prior to their purchases of the [n]otes[.]" (Br. Supp. Mot. Dismiss 5.) McDowell's Motion on this ground must therefore be denied.

V.

CONCLUSION

80. **WHEREFORE**, for the foregoing reasons, the Court hereby **DENIES** the Motion to Dismiss.

**SO ORDERED**, this the 14th day of October, 2020.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge

---

> To state a claim pursuant to § 56(a)(2) . . ., a plaintiff must at a minimum allege (1) a false or misleading statement, or a statement which, because of the circumstances under which it was made, was made false or misleading because of the omission of other facts; (2) that the statement was material; and (3) that the statement was made by one who offered or sold a security.

*Skoog*, 2013 NCBC LEXIS 16, at *15–16. A plaintiff suing under section (a)(2) need not prove a knowing and intentional failure to disclose material information to the plaintiff. *See Piazza*, 246 N.C. App. 576, 601, 785 S.E.2d 695, 711 (2016) ("[A] section 78A-56(a)(2) civil plaintiff need not prove scienter." (emphasis omitted)).